[Crim. No. 15794. Second Dist., Div. Three. Oct. 31, 1969.]

In re CARL T., a Person Coming Under the Juvenile Court Law. LELAND C. CARTER, as Chief Probation Officer, etc., Plaintiff and Respondent, v. CARL T., Defendant and Appellant.

## COUNSEL

Cadoo, Tretheway, McGinn & Morgan and Alvin S. Tobias for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COBEY, Acting P. J.**—Pursuant to section 800 of the Arnold-Kennick Juvenile Court Law (Welf. & Inst. Code, §§ 500-945), Carl T., a minor, appeals from two final orders of a referee adjudging him within the provisions of section 602, declaring him a ward of the juvenile court, and committing him to the Youth Authority until May 30, 1971. The basis for these orders was the referee's finding that on April 7, 1967, appellant, then 16 years of age, committed forcible rape and assault with a deadly weapon upon Mary, then 15 years of age and that on July 18, 1967, appellant, then 17 years of age, inhaled glue fumes in order to achieve an intoxicated condition.

The glue-sniffing, the basis for a petition under section 601, was admitted by appellant personally in open court following the conclusion of the detention hearing on the rape charge. The superior court, after presumably reading the transcript of the proceedings, denied appellant's application for a rehearing before it.

Appellant's sole defense at the detention hearing was mistaken identification. To establish this he introduced extensive alibi evidence and some evidence of a distinguishing facial characteristic. He did not, however, object to the introduction of any of the victim's identification testimony.

Nevertheless, on appeal appellant seeks reversal of the referee's orders on two grounds: (1) prejudicial error was committed in admitting the victim's in-court identification of him since that identification was tainted by her unconstitutional pretrial identification of him; and (2) his representation at the detention hearing was so inadequate as to constitute a denial of his constitutional right to counsel.

We have concluded that appellant's victim did make an unconstitutional pretrial identification of him and that, therefore, her identification testimony at the detention hearing should not have been admitted. We have further concluded, however, that the admission of this testimony constituted harmless federal constitutional error.

We have reviewed all of appellant's assertions in support of his claim of the constitutional inadequacy of his representation at the detention hearing and find them to be without merit.[1]

---

[1]In this connection appellant's appellate counsel has advanced as an example of the constitutional inadequacy of the representation afforded appellant at the detention hearing, the failure of his counsel there to introduce into evidence, until the disposition hearing, a letter to him from appellant's attending physician informing him that on the day immediately preceding the night of the rape, appellant had undergone a periodic and painful stretching of a stricture in the prostatic urethra. But upon receipt of this evidence at the later hearing the referee carefully inquired of appellant as to why he had not brought the fact of this treatment to the attention of his counsel earlier and as to how long this treatment had an adverse effect upon appel-

## THE RAPE

On Friday morning, April 7, 1967, about 12:30 a.m., Mary B. was walking home from a baby-sitting assignment. As she approached a street intersection she encountered appellant, a stranger to her. He placed a hand on her left arm and said that he would like to walk her home. Mary refused and pulled her arm away. Appellant placed a knife, with a blade three to four inches long, across Mary's throat and pulled her some seven to eight feet toward a fence at the corner, where he threw her down in the dirt behind some bushes. He told her to be quiet or he would kill her. He then, with the knife at her side, started pulling down her capris. She asked him to stop; he assured her he would not hurt her and cut the stirrups of her capris. Mary kept asking him not to do it, but he got on top of her, placed the knife against her temple and held her down. She started to cry. He said, "Shut up or I will kill you." She tried to keep her legs together. This tactic led him to put the knife down while he was forcing his penis into her vagina. She grabbed the knife and threw it away. He started to choke her; she started to scream. After she had been screaming for some 30 seconds, some people started to get out of a car that had stopped nearby. Appellant then ran away; some adults rescued her and called the police.

## THE IDENTIFICATION ISSUE

A. *The Circumstances of the Rape, Etc.*

The rape took between 10 and 15 minutes. When appellant walked up to Mary, she saw him face-to-face from the chest up. The lighting was sufficient for her to see him. There was a street light across the street from the location of the rape; it was behind appellant. Lights were also on in various of the homes and businesses across the street. During the rape some five or six cars, including two coming downhill toward the couple, drove past with their headlights on. As these cars came along appellant would look at the cars to see what their occupants were doing. The lights of the cars would then be directly on appellant's face. Otherwise appellant had his face next to Mary's and she could see mostly the back of his neck and the side of his face.

---

lant's sexual activity. The physician stated in the letter that he could not accurately answer this last question.

We cannot say that appellant's trial counsel's tardiness in this regard reduced the detention hearing to a farce or a sham or that he thereby withdrew a crucial defense from appellant. (See *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Furthermore, an appellate court should be slow to invoke *Ibarra* because its knowledge of the total defense situation is a partial one' at best since it is based exclusively on the record on appeal. (Cf. *People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].)

We have added the above mentioned letter to the record on appeal on our own motion pursuant to rules 12(a) and 30 of the California Rules of Court.

Right after the rape occurred the police asked Mary to give them a description of her assailant. She apparently reported to them that he had worn a jacket, sports shirt, heavy type pants and black shoes. She also noted that he had black hair and dark brown eyes, that his hair was cut square at the back and that he apparently shaved every day. She had smelled glue on him.

### B. *The Alibi Testimony, Ect.*

Appellant, his brother and sister, and the sister's boyfriend each testified in some detail about appellant's activities the night of the rape. According to their testimony appellant spent the night at home with his family. Furthermore, appellant and his brother testified that on that night one of his front teeth was missing as he had not yet obtained the bridge and false tooth which he exhibited at the detention hearing. Appellant's sister thought that one of his front teeth was missing at that time, but she wasn't sure. Her boyfriend had no recollection regarding the claimed missing tooth.

### C. *The Pretrial Identification.*

About a week after the rape Officer Betty Andrews of the Manhattan Beach Police Department asked appellant to come in and see her on another juvenile matter. When appellant reached the police station Lieutenant Petit, instead of Officer Andrews, questioned him about Mary's rape. Then with appellant's consent Petit took pictures of appellant. About the last week in July at least one of these pictures of appellant was shown to Mary by the police under circumstances which are not developed in the record. She testified that she was not sure from the picture shown her whether appellant had been her assailant.

On August 1, 1967, the police asked Mary to come down to the Torrance probation office to see whether she could identify appellant as her assailant. She sat down in the probation office hall and waited for appellant. He walked in and sat down across the hall from her. He was waiting to see another probation officer on the glue charge. She then recognized him as her assailant, although his hair was longer than it had been at the time of the rape. She was certain in this identification of appellant. Mary again recognized appellant as her assailant when the detention hearing first convened some six weeks later. Again throughout the detention hearing Mary remained certain in her own mind of the correctness of her identification of appellant as her assailant.

Mary's pretrial identification of appellant at the Torrance probation office was brought out by the People on direct examination. Appellant's trial counsel and the referee then cross-examined Mary on the incident and in the course of this cross-examination appellant's trial counsel developed that about a week previously she had been shown a picture of appellant by

the police. He failed, however, to ascertain any of the circumstances under which this picture was shown to Mary.

From the foregoing it can be seen that the police provided Mary with two pretrial opportunities to identify appellant as her assailant. These occurred in July and August, 1967. We need not concern ourselves with the first of these, however, the attempted photographic identification, since Mary testified that she was not sure from it whether appellant was her assailant.[2] (Cf. *People* v. *Slutts,* 259 Cal.App.2d 886, 891-892 [66 Cal.Rptr. 862].)

### D. *The Exclusionary Rules of Gilbert and Stovall.*

Under *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], and *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], all decided on June 12, 1967, the admission of testimony of both an in-court identification and a pretrial identification of the accused may be constitutionally vulnerable on two separate and distinct grounds. ■ *Wade* held that police conduct of a post-indictment pretrial lineup, at which the accused was exhibited to identifying witnesses without notice to and in the absence of his counsel, denied him his Sixth Amendment right to counsel. ■ *Gilbert* held that the admission of an in-court identification without first determining whether it was tainted by an earlier pretrial identification, made by means of an unconstitutional lineup, or whether it had an origin independent of this earlier identification, was constitutional error. (*Gilbert* v. *California, supra,* at p. 272 [18 L.Ed.2d at p. 1186].) *Gilbert* further held that the saving grace of this independent origin rule should be denied evidence introduced by the People of identification of the accused by means of a post-indictment unconstitutional lineup following appointment of counsel. (*Gilbert* v. *California, supra,* at pp. 269, 270, 272-273 [18 L.Ed.2d at pp. 1184, 1186-87].) *Gilbert* also held that these federal constitutional errors were subject to the federal harmless error rule. (*Gilbert* v. *California, supra,* at p. 274 [18 L.Ed.2d at p. 1187].)

■ *Stovall* declared that a pretrial identification of the accused by means of a one-to-one open confrontation between him and the victim could be so unnecessarily suggestive and conducive to irreparable mistaken

---

[2]In any event, the circumstances surrounding this identification attempt were not developed, and convictions based on pretrial photographic identification may be set aside only when the identification procedure is so impermissively suggestive as to give rise to a very substantial likelihood of irreparable mistaken identification. (*Simmons* v. *United States,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) Moreover, it has been held in this state that the assistance of counsel is not constitutionally required when the pretrial identification is accomplished by means of photographs. (*People* v. *Lawrence*\* (Cal.App.) 81 Cal.Rptr. 91.)

\*A hearing was granted by the Supreme Court on November 19, 1969.

identification as to constitute a denial to the accused of due process of law under the Fourteenth Amendment. Whether it is so in the individual case depends on the totality of the surrounding circumstances. (*Stovall* v. *Denno, supra,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206].) Furthermore, if the pretrial identification is found to have been a denial of due process, then the federal rule of harmless error applies. (See *Foster* v. *California,* 394 U.S. 440, 445 [22 L.Ed.2d 402, 407, 89 S.Ct. 1127].)

### E.  *Their Applicability to This Case.*

■ The first question posed by the pretrial identification issue is whether these exclusionary rules of *Stovall* and *Gilbert* apply to juvenile proceedings of the character under review—detention and disposition pursuant to Welfare and Institutions Code section 602.

We believe they do for two reasons. First, section 701 of this code provides that, ". . . a preponderance of evidence, *legally admissible in the trial of criminal cases,* must be adduced to support a finding that the minor is a person described by Section 602, . . ." (Italics added.) Secondly, independent of the statutory provision, juvenile proceedings of this character must meet the test of constitutional due process of law. (*In re Gault,* 387 U.S. 1, 12-13 [18 L.Ed.2d 527, 537-538, 87 S.Ct. 1428]; *In re M.G.S.,* 267 Cal.App.2d 329, 332, 336 [72 Cal.Rptr. 808].)

The second question in regard to the applicability of the *Stovall* and *Gilbert* exclusionary rules is whether they apply to a pretrial identification of the type involved in this case. Timewise, there seems to be no problem. *Gilbert* applies to all pretrial police lineup identifications occurring after June 12, 1967 (*Stovall* v. *Denno, supra,* 388 U.S. 293, 296 [18 L.Ed.2d 1199, 1203]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]), and *Stovall* is completely retroactive. (*Stovall* v. *Denno, supra,* at p. 299 [18 L.Ed.2d at p. 1205].) But the identification involved in *Gilbert* was by means of a police lineup conducted 16 days after Gilbert's indictment and after appointment of counsel; (*Gilbert* v. *California, supra,* 388 U.S. 263, 269 [18 L.Ed.2d 1178, 1184]) the one-to-one in person open identification in *Stovall* occurred after arrest but before appointment of counsel. (*Stovall* v. *Denno, supra,* at p. 295 [18 L.Ed.2d at p. 1202].) Here Mary's identification of appellant, although arranged by the police, was not accomplished by means of a lineup and was almost a month before the institution of juvenile proceedings and the retention thereafter of counsel. Should these factual differences prevent the application of both *Stovall* and *Gilbert* to the case before us? Stated otherwise, should the exclusionary rules of these cases be applied only to cases of essentially identical pretrial identifications?

We believe not. Certainly *Stovall* applies to all pretrial identifications arranged by the police that may be unduly suggestive. (See *Simmons* v. *United States, supra,* 390 U.S. 377, 382-383 [19 L.Ed.2d 1247, 1252-1253] (photographic identification); *Foster* v. *California, supra,* 394 U.S. 440, 443-445 [22 L.Ed.2d 402, 405-407] (lineups and a one-to-one identification).)

We would tend to reach a similar but not identical conclusion in regard to the coverage of the *Gilbert* exclusionary rule. As other courts have pointed out, the language of *Wade* upon which *Gilbert* relies, and *Wade's* rationale both support this conclusion. (*United States* v. *Wade, supra,* 388 U.S. 218, 225, 227, 229-232, 235, 236 [18 L.Ed.2d 1149, 1156, 1157, 1159-1160, 1162]; *Commonwealth* v. *Cooper* (1969) 356 Mass. 74 [248 N.E.2d 253, 259]; *Watson* v. *State* (1969) 7 Md.App. 225 [255 A.2d 103, 108]; cf. *Mason* v. *United States* (D. C. Cir. 1969) 414 F.2d 1176, 1178.) Moreover, the United States Supreme Court in its just mentioned decisions in *Simmons* v. *United States, supra,* at pp. 382-383 [19 L.Ed.2d at pp. 1252-1253], emphasizes that an accused is entitled to counsel at any " 'critical stage of the prosecution.' "

A suspect needs the assistance of counsel to insure the fairness of any in person pretrial identification arranged by the police and to prepare his counsel for effective cross-examination at the trial of the People's witnesses participating in the identification regardless of when the identification occurs or its exact nature, subject to two exceptions. These are: (1) an immediate identification under exigent circumstances such as existed in *Stovall* v. *Denno, supra,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206]; and (2) a field identification occurring so immediately after the crime that the participating victim's or eyewitness' identification is without question based entirely on his recollection of the suspect at the time of the crime. This latter form of pretrial in person identification is trustworthy, reliable, and ordinarily immune to any suggestion by the police. Furthermore, the making of such an identification may be as advantageous to the suspect as it is to the police. (See *People* v. *Irvin,* 264 Cal.App.2d 747, 759-760 [70 Cal.Rptr. 892]; *People* v. *Colgain,* 276 Cal.App.2d 118, 125-126 [80 Cal.Rptr. 659]; *People* v. *Levine,* 276 Cal.App.2d 206, 208 [80 Cal.Rptr. 731].)

We would be inclined to hold, therefore, under *Gilbert* that Mary's testimony as to her pretrial identification of appellant at the Torrance probation office was inadmissible and her in-court identification of appellant should not have been admitted without first establishing whether it had an origin independent of the unconstitutional pretrial identification. But

our Supreme Court has before it *People* v. *Fowler* *(Cal.App.) 76 Cal.Rptr. 1, a case involving the applicability of *Gilbert* to a lineup occurring before the defendant was charged. In view of this fact we do not deem it appropriate to decide the applicability of *Gilbert* to this case. We will instead merely assume it.

█ We do hold, however, that *Stovall* applies to this case and that under it Mary's identification testimony was constitutionally inadmissible. As pointed out in *Stovall* v. *Denno, supra,* at p. 302 [18 L.Ed.2d at p. 1206], the practice of showing suspects singly to persons for the purpose of identification has been widely condemned and no justification for the use of this practice in this case appears in the record before us. We, therefore, do find federal constitutional error in this respect.

## No Waiver of Error

█ The Attorney General argues that since no objection was made by appellant at the detention hearing to the admission of any of Mary's identification testimony, any error in its admission was waived. This was the position taken in *People* v. *Levine, supra,* 276 Cal.App.2d 206, 207 [80 Cal.Rptr. 731]. Its justification lies in the inability of the People to supplement the trial record if needed when the issue is first raised on appeal. (See *People* v. *Harris,* 274 Cal.App.2d 826, 831-833 [79 Cal. Rptr. 352].) But in this case the record appears to be both clear and complete regarding the circumstances of Mary's pretrial identification of appellant and Mary's opportunity to observe appellant during the rape.

For this reason we do not think that by his failure to object to any of Mary's identification testimony at the detention hearing appellant's trial counsel withdrew a crucial defense from appellant. (See *People* v. *Ibarra, supra,* 60 Cal.2d 460, 464.) In any event, if we hereafter conclude that the admission of this testimony was harmless error, any failure to object to such admission cannot be deemed a valid basis for appellant's claim of the constitutional inadequacy of his representation at the detention hearing.

## The Nonprejudicial Effect of the Pretrial Identification

█ We must now decide whether the constitutionally erroneous admission of Mary's identification testimony in this case constituted harmless error under *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] and *Harrington* v. *California,* 395 U.S. 250 [23 L.Ed.2d 284, 89 S.Ct. 1726]. To reach this conclusion we must determine the probable impact of her testimony of her pretrial identification

---

*A hearing was granted by the Supreme Court on May 8, 1969. The opinion of that court is reported in 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643].

of appellant on the mind of an average trier of fact. (*Harrington* v. *California, supra,* at p. 254 [23 L.Ed.2d at p. 288].) We must decide whether we are convinced beyond a reasonable doubt that there is no reasonable possibility that Mary's testimony in this regard contributed to the referee's finding that appellant was the individual who raped Mary. (*Chapman* v. *California, supra,* at p. 24 [17 L.Ed.2d at p. 711].)

We hold that no such reasonable possibility existed and that this finding of the referee was based entirely upon Mary's testimony regarding her lengthy opportunity to observe appellant close-up during the rape and not at all upon her pretrial identification of him. It was her observation of him during the rape and appellant's failure to produce from his dentist independent evidence of his lack of a front tooth at the time of the rape that the referee weighed against appellant's extensive alibi testimony. (Cf. *People* v. *Singletary,* 268 Cal.App.2d 41, 46 [73 Cal.Rptr. 855].)

The orders are affirmed.

Schweitzer, J., and Allport, J., concurred.