[Crim. No. 7013. First Dist., Div. Two. Aug. 28, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHNNY WESLEY III, Defendant and Respondent;
RODNEY WESTBROOK, Defendant and Appellant.

## COUNSEL

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Appellant.

Henry Ramsey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**AGEE, J.**—Defendants Rodney Westbrook and Johnny Wesley were convicted by a jury of second degree murder (Pen. Code, § 187), assault with a deadly weapon (Pen. Code, § 245) and discharging a firearm at an inhabited dwelling (Pen. Code, § 246). The jury also found that both defendants were each personally armed with a deadly weapon at the time of the commission of the foregoing offenses.[1]

The defendants were sentenced to state prison for the term prescribed by law on each of the three convictions. The court ordered that the sentence as to discharging a firearm at an inhabited dwelling run concurrently with the sentence as to assault with a deadly weapon and that the sentences as to the murder and firing at dwelling house convictions be stayed pending any appeal and during the service of the sentence that may thereafter be set by the Adult Authority as to the assault with a deadly weapon, at which time the stay as to the sentences imposed on the other two convictions would be made permanent.

The People have appealed from the judgment but they seek only a reversal of that portion which stays the execution of the murder sentence. Defendant Westbrook has appealed from the judgment of conviction. Codefendant Wesley has not appealed, being apparently satisfied with the sentence he received. (We add that the record shows that he was represented by competent counsel.)

### Facts

On the evening of March 10, 1967, defendant Wesley and one Phillips were involved in a fist fight in the carport of an apartment building in

---

[1]The other three defendants also indicted, Hunt, Gardner, and Odell Westbrook, were acquitted of all charges. They will be referred to herein by name only, and the convicted defendants, Johnny Wesley and Rodney Westbrook, at times will be referred to simply as defendants or defendant.

Richmond. Afterwards Wesley went into the building and entered the apartment of one Frances Dove; a gunshot was subsequently fired from outside which ricocheted off the kitchen window of the apartment. Later that evening Wesley described the incident to a police officer investigating the shooting and told him, "You better pick up Mr. Phillips before I do because I'm going to go out and get him before he gets me and shoot him dead."

On the following day, March 11, about 2 p.m., Phillips was in his apartment with his sister Wanda, one Mary Ruth Smith, and a third female. Three gunshots were fired from the outside into the apartment; Mary was hit by one of the shots, resulting in her death. Wanda testified that she heard Wesley call out to Phillips after the first shot had been fired. After the third shot was fired, she looked out and saw Wesley standing outside, then heading out of the gate.

Evie Huntley, a Richmond garbage man, testified that he heard gunfire, then saw two men standing beside a fence pointing guns toward the building. He heard three shots fired altogether, then saw the men run past his stopped truck; from photographs he identified one as Wesley, carrying a hand gun, and the other as Rodney Westbrook, carrying a rifle.

Milton Hill, a school community worker, testified that he observed two men leaning against the fence, and recognized one as Wesley, whom he had known for about two years. Then he conversed with Huntley, heard one shot, turned his car around, and heard two more shots. He stated he did not see who fired the shots, but observed two young men crossing the street.

On that same day, but prior to the shooting, all of the five original defendants had been seen together in a car in Richmond by witness Johnnie Marie Thorne, Wesley's cousin; Wesley, Hunt and other individuals had visited the house of witness Patsy Shaw; Wesley and other persons had been seen inside a car by witness Lee; and Rodney Westbrook, Wesley, Odell Westbrook, and Gardner had been observed inside a parked car by witness Shirley Vaughan, who was Phillips' sister. Rodney Westbrook had asked Shirley where Phillips was and she had told him she did not know. Shortly after the defendants had left, Shirley received a telephone call from Wanda and then notified Mary Smith's parents that Mary had been shot.

### Felony-Murder Instruction

The court gave an instruction on the felony-murder doctrine based upon CALJIC 305 (Revised), the relevant portions of which are as follows: "Murder of the second degree is the unlawful killing of a human being with malice aforethought which is not perpetrated by [certain means

not present here] . . . and which is not committed in the perpetration [of any of six specified felonies, none of which are involved herein]. . . . In practical application this means that the unlawful killing of a human being with malice aforethought is murder of the second degree in any of the following cases: . . . (3) When the killing is a direct causal result of the perpetration or the attempt to perpetrate a felony inherently dangerous to human life, such as discharging a firearm at an inhabited dwelling."

The same instruction was given in *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580], except that the underlying felony example therein stated was, "such as an assault with a deadly weapon," whereas the example of an underlying felony in our case was posited as "such as discharging a firearm at an inhabited dwelling."

In *Ireland* a second degree murder conviction was reversed because of the giving of this instruction, the court stating that the jury might have concluded therefrom that it should find the defendant therein guilty of second degree murder if it found *only* that the homicide was committed in the perpetration of the crime of assault with a deadly weapon. "This . . . would have relieved the jury from a specific finding of malice aforethought." (P. 539.)

Mr. Justice Sullivan, speaking for the court, therefore concluded that "a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (P. 539.) Justice Sullivan explained that "an offense may be included *in fact* within the offense charged even though it is not embraced within the statutory definition of the greater offense." (Pp. 539-540, fn. 14; italics by the court.)

In *People* v. *Wilson* (1969) 1 Cal.3d 431, 440-441 [82 Cal.Rptr. 494, 462 P.2d 22], Mr. Justice Mosk stated: "In *Ireland,* we rejected the bootstrap reasoning involved in taking an *element* of homicide and using it as the *underlying felony* in a second degree felony-murder instruction. . . . To hold otherwise, we would have to declare that because burglary [based upon fact that defendant entered wife's apartment with intent to commit assault with a deadly weapon] is not technically a lesser offense included within a charge of murder, burglary constitutes an *independent felony* which can support a felony-murder instruction. However, in *Ireland* itself we did not assert that assault with a deadly weapon was a lesser included offense in murder; we asserted only that it was 'included in fact' in the charge of murder, in that the elements of the assault were necessary elements in the homicide. [Citation.] In the same sense, a burglary based on intent to assault with a deadly weapon [or, as herein, discharging a firearm

at an inhabited dwelling] is *included in fact* within a charge of murder, and cannot support a felony-murder instruction." (Italics ours.)

Justice Mosk pointed to certain other states that have adopted the merger doctrine, i.e., the "concept that only felonies independent of the homicide can support a felony-murder instruction; felonies that are an integral part of the homicide are *merged* in the homicide." (Italics by the court.)

In the instant case, the Attorney General, while recognizing the authority of *Ireland* and the many other decisions which followed it, argues that the underlying felony, i.e., discharging a firearm at an inhabited dwelling, is not an offense "included in fact" within the murder charged in this case. We do not agree.

It is undisputed that the homicide and the underlying felony referred to in the court's instruction were committed by the same act. The discharge of the firearms by the defendants was the means by which the homicide was committed and was *in fact* an "integral part" and a "necessary element" of the homicide. Under the rule of *Ireland* and *Wilson*, the question as to whether the criminal act of committing the two lesser offenses was done with "malice aforethought" should have been left to the jury.

Some of the cases which have followed the *Ireland* decision since its rendition on February 28, 1969, are: *People* v. *Jenkins* (1969) 275 Cal.App.2d 545 [80 Cal.Rptr. 257]; *People* v. *Nabayan* (1969) 276 Cal.App.2d 361 [80 Cal.Rptr. 779]; *People* v. *Blakeslee* (1969) 2 Cal.App.3d 831 [82 Cal.Rptr. 839]; *People* v. *Wilson* (1969) *supra,* 1 Cal.3d 431; *People* v. *Stines* (1969) 2 Cal.App.3d 970 [82 Cal.Rptr. 850]; *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847].

Based upon the foregoing authorities and the record herein, we hold that neither the commission of the offense of discharging a firearm at an inhabited dwelling (Pen. Code, § 246) nor the commission of the offense of assault with a deadly weapon (Pen. Code, § 245) was a felony independent of the homicide charged and that the giving of an instruction on the felony-murder rule constituted prejudicial error.

As a corollary, we further hold that each of the two felonies specified above (§§ 245, 246) is an integral part of the homicide charged and, as the evidence produced by the prosecution shows, is an offense included *in fact* within said homicide. (*People* v. *Ireland, supra,* 70 Cal.2d at pp. 539-540, fn. 14.)

In *Ireland, supra,* the court points out that the giving of a second degree felony-murder instruction has the effect of relieving the jury of the necessity of finding one of the elements of the murder charged, to wit, malice aforethought. (70 Cal.2d, at p. 539.)

The Attorney General makes no contention that there was not evidence from which the jury could have found an absence of malice aforethought on Westbrook's part. We therefore do not discuss the matter.

The Attorney General states that "We have been unable to find any case in which the *Ireland* rule was applied to a felony not involving assault." We do not attach any significance to this statement, since even here Westbrook was also convicted of assault with a deadly weapon. It should also be noted that the court did not eliminate this offense from the instruction, since assault with a deadly weapon is certainly "a felony inherently dangerous to human life."

It appears reasonably probable to us that a result more favorable to defendants on the murder charge might have been reached had the felony-murder instruction not been given. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

### Validity of the Other Convictions

Westbrook does not contend that the prosecution did not establish the corpus delicti of the other offenses of which he was convicted, i.e., it was sufficiently proven that on March 11, 1967, about 2 p.m., two young men, one armed with a rifle and the other with a hand gun, were standing outside of the apartment building in which Phillips lived. They fired three shots at Phillips' apartment, one of which hit and killed a person therein.

Westbrook's defense is that he was not one of the two men and that error was committed in identifying him as such.

On March 21, 1967 witnesses Hill and Huntley were shown a group of 9 or 10 photos. Each picked out the same two, one being of Wesley and the other of Westbrook. These were marked at the trial as Exhibits 13 and 14. No objection was made to this testimony. Shortly after this photographic identification both witnesses observed a lineup and identified two members thereof, Wesley and Westbrook, as being the two young men they had seen commit the offenses in question. Neither defendant had counsel present on either occasion.

The indictment against defendants was filed thereafter, on April 12, 1967. The trial commenced on June 8, 1967. *On June 13* Huntley made a courtroom identification of Wesley and Westbrook as the two persons he

had seen carrying firearms at the scene of the shooting. No objection was made to this testimony.

The next day, *June 14,* while Hill was on the witness stand, he was asked if he saw the two men in the courtroom whom he had seen on March 11 at the scene of the crimes. Objection was made on the basis that an in-court identification by Hill of either defendant was tainted by the fact that neither defendant was represented by counsel at the lineup held on March 21, 1967.

Defense counsel apparently had just learned of two decisions rendered by the United States Supreme Court only two days before, on June 12, 1967. These two decisions, *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], held that a defendant is entitled to the presence of his counsel at a lineup in which he is included and which is exhibited to identifying witnesses before trial.

*On June 15* counsel for Westbrook moved on the same ground to strike the testimony of witness Huntley as to his courtroom identification of Westbrook and Wesley.

On June 19, the court sustained the objection made to the question asked of Hill when he was on the witness stand as to whether he could see the two culprits in the courtroom. On June 20, the court granted the motion to strike Huntley's courtroom identification of the two defendants and admonished the jury to disregard such testimony.

The trial court apparently based its rulings upon a belief that California would apply the *Wade-Gilbert* rule retroactively. However, this belief proved to be inaccurate.

In *People* v. *Terry* (1969) 70 Cal.2d 410, 423 [77 Cal.Rptr. 460, 454 P.2d 36], the court stated: "Defendant contends that the bank teller's identification testimony was inadmissible because he had first identified defendant at a lineup, conducted after defendant was charged with murder and while he was deprived of the assistance of counsel. However, the rules announced in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]—requiring the exclusion of identification evidence which is *tainted by exhibiting the accused to identifying witnesses before trial in the* absence of counsel—affect only those cases involving showups conducted after June 12, 1967. (*Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].)" The lineup here was well before that date.

Hence, although the trial court was in error in its two rulings above

specified, and the lineup was otherwise properly and fairly conducted, as the record shows it was, it was error *against the People* and not against defendants. Westbrook therefore has no cause for complaint.

The reasoning of the trial court in admitting in evidence the photographic identification testimony of both Hill and Huntley was that such identification preceded the lineup and was therefore not tainted by it. No objection was made to the testimony of a police officer that he was present at the photographic identification and who testified as to the manner in which each witness made such identification.

Westbrook has not called our attention to any case sustaining his position with respect to the photographic identification by Hill and Huntley and we know of none.

Witkin says the *Wade* rule only applies when the defendant is in a lineup. (Cal. Evidence (2d ed.) 1969 Supp., p. 194.) He cites the recent Supreme Court case of *People* v. *McClellan* (1969) 71 Cal.2d 793 [80 Cal.Rptr. 31, 457 P.2d 871], wherein Justice Peters summarily dismissed a similar contention, as follows: "Shortly before defendant's trial began, the prosecutor held a meeting of witnesses at the Gaslight Cafe to reenact the offenses. Defense counsel was not present at this meeting, and he was not invited or notified of it. Defendant claims that the holding of this meeting violated his right to counsel as defined in *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]. There is no merit to this contention." (Pp. 797-798.)

Justice Mosk wrote a dissenting opinion in *McClellan* directed *solely* to the majority opinion as it related to the death penalty phase of the judgment. Nothing therein indicates any disagreement by the minority as to the point now before us.

Police Officer Percy testified *without objection* to showing 9 or 10 photographs to Hill and Huntley and each without hesitation selected the photos of Westbrook and Wesley as being the two men who did the shooting. There is absolutely no evidence of any unfairness in the showing of the photographs.

We hold that Westbrook's contention that the photographic identification testimony in question should not have been admitted in evidence is without merit. (*People* v. *Green* (1969) 3 Cal.App.3d 240, 246 [83 Cal.Rptr. 491] (hg. den.); *In re Carl T.* (1969) 1 Cal.App.3d 344, 350, fn. 2 [81 Cal. Rptr. 655].)

*Stay of Sentence on Murder Conviction*

The People state that the sentence on the conviction as to firing into a dwelling house may properly be stayed, but the sentence on the murder conviction may not be stayed because it carries the more severe penalty.

In support of this contention, the People cite *In re McGrew* (1967) 66 Cal.2d 685, 688 [58 Cal.Rptr. 561, 427 P.2d 161], and *In re Wright* (1967) 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998].

In each of these cases the trial court failed to comply with the following provision contained in Penal Code section 654: "An act or omission which is made punishable in different ways by different provisions of this code *may be punished under either of such provisions, but in no case can it be punished under more than one.*" (Italics added.)

The Supreme Court in *In re McGrew, supra,* page 688, stated: "It has been settled . . . that where excessive punishment has been imposed, the appropriate procedure *at the appellate level* is to eliminate the effect of the judgment as to the less severely punishable offense insofar as penalty alone is concerned." (Italics added.)

Neither *In re McGrew, supra,* nor *In re Wright, supra* (see p. 656), is authority for the proposition that a trial court, while properly recognizing the above provision of section 654, is *required* to punish a defendant being sentenced on more than one conviction to the most severe penalty that may be imposed.

Westbrook stresses the use of the words "may" and "either" in the provision of section 654 quoted above, i.e., "may be punished under either of such provisions."

This position seems to be supported by a recent Supreme Court case, *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]. The defendant there was found guilty of assault with a deadly weapon upon a peace officer (count I) and assault with intent to murder the same officer (count III). The trial court stayed execution of the sentence on count I, which carried a maximum penalty of 15 years, and ordered service of the sentence on count III, which carried a maximum penalty of only 14 years.

In reversing the judgment because of prejudicial error involving jury instructions, the Supreme Court first recited without comment which of the two penalties had been imposed. Then, in order to preclude penalizing defendant for appealing, the court ruled that upon retrial the trial court could not impose upon the defendant a maximum sentence greater than the 14 years which had previously been imposed upon him. (P. 459.) The .

Supreme Court thus appears to have sanctioned a trial court's imposition of the less severe among possible double punishments.

In *People* v. *Chavez* (1970) 4 Cal.App.3d 832 [84 Cal.Rptr. 783], defendant was convicted of second degree robbery (Pen. Code, § 211) and kidnaping for the purpose of robbery (Pen. Code, § 209). He was sentenced to state prison on both convictions but execution of the kidnaping sentence was stayed pending appeal and service of the sentence imposed on the robbery conviction, the stay to become permanent upon completion of the robbery sentence.

The Court of Appeal stated, at page 839: "We note the trial court suspended execution of sentence [for kidnaping] . . . and sentenced appellant [on the second degree robbery] . . ., which carries a lesser maximum sentence. Since we must reverse the kidnaping conviction, we call attention to the case of *People* v. *Hood,* 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370] which under this circumstance would preclude additional penalty should appellant be convicted under Penal Code section 209 on any retrial."

In the absence of authority to the contrary, the stay of sentence granted by the trial court in the case at bar should be upheld.

The judgment as to appellant, Westbrook, is reversed as to count Three of the indictment (murder) and affirmed as to the convictions of assault with a deadly weapon (Pen. Code, § 245) and discharging a firearm at an inhabited dwelling (Pen. Code, § 246).

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied September 25, 1970, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied October 28, 1970. Wright, C. J., was of the opinion that the petition should be granted.