132 Cal.App.3d 1027 (1982)
182 Cal. Rptr. 197
THE PEOPLE, Plaintiff and Respondent,
v.
SHEILA D. NORTHROP, Defendant and Appellant.
Docket No. 21897.
Court of Appeals of California, First District, Division One.
April 23, 1982.
*1031 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Paul D. Fogel, Deputy State Public Defender, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and Paul D. Gifford, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
NEWSOM, J.
Appellant was convicted after jury trial of second degree murder (Pen. Code, § 189) and felony child abuse (Pen. Code, *1032 § 273a, subd. (1)). She was thereafter sentenced to state prison for 15 years to life on the murder conviction and concurrently for the middle term of two years on the child abuse conviction. The convictions were based on the following pertinent facts.
On December 10, 1979, at approximately 6:40 a.m., appellant and her husband, Mike Northrop, arrived at the Kaiser Hospital in Redwood City. Mike entered the emergency room, contacted a nurse and explained that his 22-month-old child was "ill." The nurse accompanied him to his car and took the child from appellant, who was "just sitting there" with the child in her arms. When the nurse picked up the child, he noticed that it was "rigid and cold." He then carried the child into the emergency room and contacted one of the physicians.
When told that the child, Kelly, was dead on arrival, Mike cried and "broke down," but, according to the testimony of nurse May Donovan and Dr. Joseph Robinson, appellant remained very "unemotional" and "stoic."
An autopsy on, and X-rays of, Kelly indicated that on different occasions up to 10 of her ribs had been fractured. The oldest fracture was from one to three months old, but five of the ribs had been broken within twenty-four hours of death. Since a child's bones are more pliable than an adult's, more relative force is required to fracture them.
Dr. Peter Benson, who performed the autopsy, concluded that death had resulted from organ damage and bone injuries resulting from the infliction of blunt force. He specifically noted that there was substantial damage to the right kidney and adrenal gland, which indicates that the force applied to this area was especially severe, as these organs are protected and placed well within the body.
According to expert testimony offered by the prosecution, and not controverted by appellant, Kelly's injuries were consistent with those associated with the "battered child syndrome," due to their multiplicity and type, and the rarity of such severe bone and organ injuries.
The evidence established that Kelly was born to appellant in January 1978, in North Carolina. Thereafter, appellant married Mike, who was not Kelly's father, and subsequently moved with Mike to California, leaving Kelly temporarily in North Carolina with appellant's mother. In *1033 April 1979, appellant returned to North Carolina and brought Kelly back with her to live with the couple in California.
During the summer and fall of 1979, friends and neighbors of appellant and Mike observed at various times that Kelly was bruised, scarred, and appeared ill. Kelly never received treatment for any of these injuries.[1]
Appellant testified that she neither beat Kelly nor knew about any of the child's injuries. Appellant's testimony suggests a belief on her part that Mike abused the child.[2] According to appellant, while she and Mike were taking Kelly to the hospital on December 10, Mike admitted hitting the child to "make her stop crying."
As part of her defense, appellant also presented the testimony of a psychiatrist; he examined the appellant, administered tests to her, and concluded that she did not fit the "battering mother" syndrome profile.

I
(1a) Appellant first complains that the use of felony child abuse as the basis for application of the felony-murder instruction  using child abuse as the underlying felony  was erroneously given to the jury.[3]
*1034 Appellant has relied upon application of the "Ireland" doctrine to the present case. In People v. Ireland (1969) 70 Cal.2d 522 [75 Cal. Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323], our high court announced that "a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged." (Id., at p. 539; see also People v. Wesley (1970) 10 Cal. App.3d 902, 906 [89 Cal. Rptr. 377].)
The Ireland doctrine is designed to prevent establishing the element of malice merely by proof of the commission of a felony which is an integral part of the homicide itself. (People v. Poddar (1974) 10 Cal.3d 750, 756 [111 Cal. Rptr. 910, 518 P.2d 342].) (2) "The felony-murder rule allows the implication of malice as an element of murder from the committing of an inherently dangerous felony" (id., at p. 755), but justification for the rule is found in the need to discourage the commission of felonies inherently dangerous to human life by holding for murder those who kill, either intentionally or unintentionally, during the course of such felonies. (People v. Washington (1965) 62 Cal.2d 777, 781 [44 Cal. Rptr. 442, 402 P.2d 130]; People v. Calzada (1970) 13 Cal. App.3d 603, 606 [91 Cal. Rptr. 912].)[4]
Since the effect of the felony-murder doctrine is to erode the relationship between criminal liability and moral culpability, the Supreme Court has declared the caveat that the doctrine "`should not be extended beyond any rational function that it is designed to serve.'" (Italics omitted; People v. Satchell (1971) 6 Cal.3d 28, 34 [98 Cal. Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; People v. Carlson (1974) 37 Cal. App.3d 349, 353 [112 Cal. Rptr. 321].) Accordingly, it is well-settled that the rule should be given the "narrowest possible application consistent with its ostensible purpose  which is to deter those engaged in felonies from killing negligently or accidentally." (6 Cal.3d at p. 34.)
*1035 The "Ireland" doctrine furthers this goal by precluding use of the felony-murder doctrine where the underlying felony is "a necessary ingredient of the homicide," or its elements "were necessary elements in the homicide." (People v. Wilson (1969) 1 Cal.3d 431, 438-441 [82 Cal. Rptr. 494, 462 P.2d 22].) The rule is to be applied only when the subject felony is "independent of the homicide." (Id., at p. 442, fn. 5.)
(1b) Appellant submits that the felony of child abuse is an "integral part" of and included in fact in the homicide. Since felony child abuse, under the statutory definition, requires an intent to inflict or permit infliction of punishment or injury under conditions "likely to produce great bodily harm or death"[5] (People v. Atkins (1975) 53 Cal. App.3d 348, 358 [125 Cal. Rptr. 855]), appellant reasons that the same acts and intent which constitute the underlying felony here also constituted the homicide, thereby making the Ireland exception applicable.
In People v. Burton, supra, 6 Cal.3d 375, however, the Supreme Court specifically rejected the notion that Ireland and Wilson should be interpreted "to mean ... that if the facts proven by the prosecution demonstrate that the felony offense is included in fact within the facts of the homicide and integral thereto, then that felony cannot support a felony-murder instruction." (Id., at p. 387.) The court explained that the purpose of the felonious conduct must be examined, and noted that in both Ireland and Wilson "[t]he desired infliction of bodily injury was in each case not satisfied short of death." (Ibid.)[6]
We find the purpose of the felony-murder rule to be furthered by its application here. Felony child abuse, even if based upon the same acts as the homicide, can be committed without inflicting death, and, more importantly, without intending to inflict injuries which will result in death. In People v. Jaramillo (1979) 98 Cal. App.3d 830 [159 Cal. Rptr. 771], the court reasoned that under section 273a: "For the felony punishment *1036 there is no requirement that the actual result be great bodily injury. The statute is intended to protect a child from an abusive situation in which the probability of serious injury is great." (Id., at p. 835.)
Thus, felony child abuse can be, and often is, committed without infliction of fatal injuries, so that application of the felony-murder doctrine serves its deterrent function by holding those who commit felony child abuse strictly responsible for deaths that occur either intentionally or accidentally from commission of the underlying felony.
In People v. Mattison (1971) 4 Cal.3d 177 [93 Cal. Rptr. 185, 481 P.2d 193], application of the felony-murder rule was upheld against a challenge based upon the "Ireland" doctrine under circumstances we find analogous to the present case. The underlying felony was administering poison with the intent to injure. (Pen. Code, § 347.) The court reasoned that application of the felony-murder rule served as a deterrent since the underlying felony could be committed without an intent to cause death-producing injuries. (Id., at pp. 185-186.)[7] Accordingly, application of the felony-murder rule was found proper because the underlying felony was committed with a "`collateral and independent felonious design.'" (Id., at p. 185.)
In People v. Shockley (1978) 79 Cal. App.3d 669 [145 Cal. Rptr. 200], it was specifically held that the "Ireland" doctrine was not violated by use of felony child abuse (Pen. Code, § 273a) as the basis for the felony-murder rule. (Id., at p. 677.) The court found that such application of the felony-murder rule was "properly within the purpose of the legislative effort to deter felonious conduct which may result in death." (Ibid.)
We agree. Felony child abuse may be committed without either an intent to kill or the infliction of great bodily harm, and thus has a felonious design independent of the resulting homicide. This is so particularly where, as here, the evidence suggests appellant may well have committed the felony by suffering the child to endure grievous injury without treatment, rather than actually inflicting the death-producing injuries.
*1037 We conclude that the subject violation of section 273a, subdivision (1) had a felonious design independent of the homicide. In our view, the felony-murder rule would be unnecessarily emasculated and its deterrent function contravened if we were to rule that it could not be applied in this case.
Accordingly, we find no error in the felony-murder instruction given by the trial court.

II
(3a) Next, appellant argues that the trial court failed to properly define for the jury the "specific intent" required to support the felony-murder charge, making the felony-murder instruction fatally defective.
The trial court instructed the jury as follows: "The defendant can only be convicted of felony murder if under circumstances or conditions likely to produce great bodily harm or death, the defendant had the specific intent to and did either: (1) permit any child to suffer an unjustifiable physical pain; (2) permit the person or health of such child to be injured; or (3) permit the child to be placed in such circumstances or conditions that its person or health is in danger."
The jury was further instructed, as requested by appellant, that under both theories (classic and felony murder) of second degree murder, "there must exist a union of joint operation of act and conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed."
The term "specific intent" was not further defined by the court. Instead, the jury was informed that felony child abuse is "a general intent crime, not requiring an intent to violate the law." The court explained: "When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."[8]
(4) In ruling upon the sufficiency of jury instructions, the cardinal rule is that instructions must be read as a whole. (People v. Galloway (1979) 100 Cal. App.3d 551, 567 [160 Cal. Rptr. 914]; People v. Rhodes *1038 (1971) 21 Cal. App.3d 10, 21 [98 Cal. Rptr. 249].) "`Whether a jury has been correctly instructed is not to be determined from a consideration of parts of an instruction or from particular instructions, but from the entire charge of the court.'" (People v. Mardian (1975) 47 Cal. App.3d 16, 46 [121 Cal. Rptr. 269].)
(3b) We conclude that the trial court's charge correctly informed the jury that the requisite intent under the felony-murder theory is the specific intent to commit the underlying felony. (People v. Fain (1969) 70 Cal.2d 588, 599 [75 Cal. Rptr. 633, 451 P.2d 65]; People v. Brunt (1972) 24 Cal. App.2d 945, 954 [101 Cal. Rptr. 457].) The specific intent element was, moreover, properly limited to the felony-murder charge; it would have been error for the trial court to apply the specific intent instruction to the child abuse count, since felony child abuse is a general intent crime. (People v. Atkins (1975) 53 Cal. App.3d 348, 358 [125 Cal. Rptr. 855]; People v. Curtiss (1931) 116 Cal. App.Supp. 771, 785 [300 P. 801].)
The failure to further define specific intent as it related to the felony-murder charge was unnecessary. Under the felony-murder doctrine, the intent required for a conviction of murder is imported from the specific intent to commit the concomitant felony. (People v. Sears (1965) 62 Cal.2d 737, 745 [44 Cal. Rptr. 330, 401 P.2d 938].) The instructions given by the court, when read as a whole, adequately advised the jury of the requisite mental state required for each crime: the general intent necessary to convict appellant of felony child abuse, and the specific intent required for a conviction of felony murder based upon that underlying felony. We find the instructions neither defective nor fatally confusing.
(5) Appellant also argues that the trial court's use of CALJIC No. 1.20 to define the term "wilfully" as it pertained to the child abuse charge was improper. The challenged instruction was as follows: "In respect to Count Two, the word `wilfully,' when applied to the intent with which an act is done or omitted as used in my instructions, implies simply a purpose or willingness to commit the act. The word `wilfully' does not require as to [sic] any intent to violate the law or to injure another or to acquire any advantage."
*1039 According to appellant, the trial court's definition of "wilfully" does not reflect the requirement of Penal Code section 273a that the criminal acts are established as "purposeful" or done "with knowledge of consequences." (People v. Harris (1966) 239 Cal. App.2d 393, 397 [48 Cal. Rptr. 677].)
The record shows that the court defined child abuse for the jury as requested by appellant. The prosecution offered an instruction on child abuse which included the following definition of "wilfully": "The word `wilfully' as used in the foregoing instructions means with knowledge of consequences or purposeful." This proffered instruction was refused so that appellant's definition of child abuse could be given. The prosecutor suggested that CALJIC No. 1.20 be used to augment appellant's definition of child abuse which contained no definition of "wilfully," and defense counsel agreed.
Since appellant acquiesced in and even suggested the instruction given by the trial court which defined child abuse and the term "wilfully," she cannot now complain that it was flawed. As stated in People v. Nieves (1969) 2 Cal. App.3d 562, 568 [82 Cal. Rptr. 661]: "[t]he instruction was labeled a defendant's instruction and presumably was requested by appellant's trial counsel. Thus, even if it is assumed that the instruction was misleading to appellant's detriment, he cannot complain on appeal under the doctrine of invited error [citation]."
(6) We further find that the definition of "wilfully" embodied in CALJIC No. 1.20 and given by the trial court was essentially correct and adequate. In People v. Atkins, supra, the court rejected the argument that "wilfully," as used in section 273d, means a specific intent to inflict corporal punishment upon a child which results in a traumatic condition. The court noted: "The word `wilfully,' while ofttimes causing confusion in certain areas of the law, is clear in the statute in question. The word has the meaning defined in Penal Code section 7, subdivision 1, which specified that `The word "wilfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.'" (53 Cal. App.3d 348, 358; see also People v. Peabody (1975) 46 Cal. App.3d 43, 46 [119 Cal. Rptr. 780];[9]People v. Kuhn (1963) 216 Cal. App.2d 695, 699 [31 Cal. Rptr. 253].)
*1040 The trial court's instruction injected the concept of purposefulness into the term "wilfully" and thus, we conclude, fairly defined the mental state required for a conviction of section 273a. We find no error in it.

IV
(7) Next, appellant complains that the trial court erred by deleting the instructional reference to "mere presence" in defining aiding and abetting for the jury.
The challenged instruction given by the trial court  taken from CALJIC No. 3.01  reads: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime." The remainder of CALJIC No. 3.01, which the trial court excised as not pertinent to the facts or theory of the case, provides: "Mere presence at the scene of a crime and failure to take steps to prevent a crime do not themselves establish aiding and abetting."
Appellant submits that the "mere presence" clause of CALJIC No. 3.01 was legally and factually applicable to the present case, since appellant's testimony at trial suggested that her husband inflicted injuries upon the child without her involvement or knowledge. Respondent argues that neither substantial evidence nor commonsense supports appellant's claim that she was "merely present" in the one-bedroom apartment when her husband beat the child.
It is not error to omit an instruction which is not based upon substantial evidence. (People v. Harris (1981) 28 Cal.3d 935, 958-959 [171 Cal. Rptr. 679, 623 P.2d 240].) The jury should be instructed only upon theories and principles of law which are supported by substantial evidence. (People v. Flannel (1979) 25 Cal.3d 668, 685 [160 Cal. Rptr. 84, 603 P.2d 1]; People v. Rollo (1977) 20 Cal.3d 109, 123 [141 Cal. Rptr. 177, 569 P.2d 771].) "Speculation is not a basis for giving of instructions." (People v. Day (1981) 117 Cal. App.3d 932, 936 [173 Cal. Rptr. 9].)
*1041 Appellant's defense was that she was unaware of the injuries inflicted upon Kelly. She neither testified nor claimed that she was "merely present" when the child was beaten. Accordingly, appellant was not entitled to an instruction such as that embodied in the mere presence clause of CALJIC No. 3.01. (Ibid.)
Even if, arguendo, we were to find error in the claimed instructional omission, we would view it as harmless in light of the instructions actually given. Appellant was convicted of child abuse and felony murder based upon evidence that she either personally injured the child or permitted the abuse. The court's instruction defining child abuse properly informed the jury that appellant could not be found guilty of violating section 273a unless the evidence established that she wilfully permitted her child to be placed in a health-endangering situation. The jury was thus made aware that appellant could not be found guilty of the crimes simply based upon her presence in the house. We therefore conclude that the deletion of the "mere presence" clause of CALJIC No. 3.01 was not prejudicial, as it was not reasonably probable that a result more favorable to appellant would have occurred if the "mere presence" language had been included in the instruction. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; People v. Perry (1979) 100 Cal. App.3d 251, 261 [161 Cal. Rptr. 108]; People v. Earnest (1975) 53 Cal. App.3d 734, 745 [126 Cal. Rptr. 107].)

V
(8) Appellant also argues that the trial court erred by instructing the jury, pursuant to a modified version of CALJIC No. 3.34, that: "The intent with which an act is done is shown by a statement of intent made by a defendant; ..." Appellant objects that the instruction is not supported by the evidence and was therefore misleading. She relies on the principle that it is error to give an instruction which correctly states a principle of law, but which has no application to the facts of the case. (People v. Sanchez (1947) 30 Cal.2d 560, 572 [184 P.2d 673]; People v. Martinez (1978) 82 Cal. App.3d 1, 19 [147 Cal. Rptr. 208].)
We find no merit in this argument. Appellant's testimony included statements which explained her reasons for failing to have her child's burns treated, and her actions and explanations when a neighbor observed her pull Kelly's shirt down and rub the child's stomach. Such testimony, along with additional statements which explained appellant's *1042 conduct, furnished ample evidentiary support for the challenged instruction.

VI
(9a) We next proceed to appellant's complaint that the trial court erred in refusing to admit defense evidence of appellant's extrajudicial statements reflecting upon her state of mind; including: (1) a conversation between appellant and her mother in June 1979, in which appellant recounted that Mike slapped her; and (2) a conversation between appellant and Mike in September 1979, when appellant was staying with her mother in North Carolina, during which appellant expressed reservations about taking Kelly back to live with Mike in California. Defense counsel sought to elicit these statements from appellant's mother, Jean Barnes, during cross-examination.
The prosecutor objected to this evidence as hearsay, but it was excluded by the trial court based upon Evidence Code section 352. The conversation was considered too remote in time to be sufficiently probative of appellant's state of mind during the time in question.
It is well-settled that a trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse. (People v. Wein (1977) 69 Cal. App.3d 79, 90 [137 Cal. Rptr. 814]; People v. Barrow (1976) 60 Cal. App.3d 984, 995 [131 Cal. Rptr. 913], overruled on other grounds People v. Jimenez (1978) 21 Cal.3d 595, 608 [147 Cal. Rptr. 172, 580 P.2d 672].) (10) It is also established that "`Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense.'" (People v. Taylor (1980) 112 Cal. App.3d 348, 364 [169 Cal. Rptr. 290]; People v. Reeder (1978) 82 Cal. App.3d 543, 553 [147 Cal. Rptr. 275].) This does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than "slight-relevancy" to the issues presented. (People v. Reeder, supra, 82 Cal. App.3d 543, 552.) The "mere possibility" that someone else committed the crime is insufficient to justify admission. (People v. Whitney (1978) 76 Cal. App.3d 863, 869 [143 Cal. Rptr. 301].) The proffered evidence must be of some competent, substantial and significant value. (People v. Green (1980) 27 Cal.3d 1, 22 [164 Cal. Rptr. 1, 609 P.2d 468]; People v. Reeder, supra, at p. 553.)
*1043 (9b) In our view, the state of mind evidence offered here by appellant was not significantly probative. It reflected only indirectly upon appellant's state of mind at a remote time. We thus conclude that the trial court did not abuse its discretion in refusing to admit the evidence. (People v. Green (1980) 27 Cal.3d 1, 22-23 [164 Cal. Rptr. 1, 609 P.2d 468]; People v. Whitney, supra, 76 Cal. App.3d 863, 869-870; People v. Lynn (1971) 16 Cal. App.3d 259, 270-271 [94 Cal. Rptr. 16].)

VII
(11a) Appellant's final argument is that the trial court violated the Penal Code section 654 proscription against multiple punishment for the same criminal acts by sentencing appellant to a concurrent term for the child abuse conviction.
(12) A single indivisible course of criminal conduct may not be punished under more than one criminal statute. "Section 654 of the Penal Code provides in part, `An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; ...'" (People v. Greene (1973) 34 Cal. App.3d 622, 654 [110 Cal. Rptr. 160].)
"`"The proscription against double punishment [in Penal Code section 654] is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute [within the meaning of Penal Code section 644]...."'" (People v. Vidaurri (1980) 103 Cal. App.3d 450, 464 [163 Cal. Rptr. 57].) The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses were incident to one objective a defendant may be punished under only one statute; on the other hand, a defendant may be punished for separate crimes if he is deemed to have entertained multiple criminal objectives which were independent of and not merely incidental to each other. (People v. Miller (1977) 18 Cal.3d 873, 885 [135 Cal. Rptr. 654, 558 P.2d 552]; People v. Maese (1980) 105 Cal. App.3d 710, 726 [164 Cal. Rptr. 485].)
(11b) We acknowledge that appellate decisions have recognized that the crime of felony murder and its underlying felony generally comprise only one criminal act and objective. (People v. Milan (1973) 9 Cal.3d 185, 196-197 [107 Cal. Rptr. 68, 507 P.2d 956]; People v. Kelso (1976) *1044 64 Cal. App.3d 538, 542-543 [134 Cal. Rptr. 364]; People v. Mulqueen (1970) 9 Cal. App.3d 532, 547 [88 Cal. Rptr. 235].) In the present case, however, the crime of child abuse involved repeated beatings and a course of criminal conduct. Consequently, it is not necessarily true that the two offenses arose from the same act. We find the record susceptible to the interpretation that multiple injuries were inflicted upon the child over a prolonged period of time, so that the jury could have reasonably concluded, as could the trial court at sentencing, that the acts which resulted in the child's death and appellant's felony-murder conviction were not those upon which the child abuse conviction were based. (People v. Atkins, supra, 3 Cal. App.3d 348, 359-360.) The court did not err in imposing a concurrent sentence for the child abuse conviction.[10]
The judgment is affirmed.
Racanelli, P.J., and Grodin, J.,[*] concurred.
A petition for a rehearing was denied May 21, 1982, and appellant's petition for a hearing by the Supreme Court was denied June 16, 1982.
NOTES
[1] Appellant told a friend that she intended to take Kelly to the doctor for treatment of severe burns on the child's arm, received in mid-October; however, no treatment for the burns was ever obtained.
[2] The evidence revealed not only that Mike was not fond of the child, but that he had asked on several occasions to avoid doctors for fear that they would be charged with child abuse.
[3] The jury received the following felony-murder instruction: "The unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs as a direct causal result of the commission of or attempt to commit a felony inherently dangerous to human life, namely, the crime of child abuse or child endangering, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the second degree. [¶] The specific intent to commit child abuse or child endangering and the commission or attempt to commit such crime must be proved beyond a reasonable doubt. [¶] Only certain types of felony child abuse or child endangering may be used in applying the felony-murder rule just defined for you. The Defendant can only be convicted of felony-murder if under circumstances or conditions likely to produce great bodily harm or death, the Defendant had the specific intent to and did either: [¶] 1. Permit any child to suffer an unjustifiable physical pain; [¶] 2. Permit the person or health of such child to be injured; or [¶] 3. Permit the child to be placed in such circumstances or conditions that its person or health is endangered."
[4] As explained in People v. Burton (1971) 6 Cal.3d 375, 388 [99 Cal. Rptr. 1, 491 P.2d 793]: "The Legislature has said in effect that this deterrent purpose outweighs the normal legislative policy of examining the individual state of mind of each person causing an unlawful killing to determine whether the killing was with or without malice, deliberate or accidental, and calibrating our treatment of the person accordingly. Once a person perpetrates or attempts to perpetrate one of the enumerated felonies, then in the judgment of the Legislature, he is no longer entitled to such fine judicial calibration, but will be deemed guilty of first degree murder for any homicide committed in the course thereof."
[5] Penal Code section 273a, subdivision (1) provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 3 or 4 years."
[6] It was held in Burton that armed robbery could serve as the underlying felony for application of the felony-murder rule, because it had an "independent felonious purpose." (Ibid.)
[7] People v. Taylor (1970) 11 Cal. App.3d 57 [89 Cal. Rptr. 697], in which the underlying felony was furnishing heroin (Health & Saf. Code, § 11501), was found persuasive by the court.
[8] The term "wilfully" as required to convict appellant of felony child abuse was also defined by the court.
[9] The court in Peabody held that a Penal Code section 273a instruction must include an admonition that a conviction requires proof of criminal negligence, not mere inattention or mistake in judgment. (Id., at pp. 48-49.) The instruction proffered by the prosecution, and deleted to make way for appellant's requested instruction on child abuse, included such an admonition.
[10] In her supplemental brief, appellant claims that the felony-murder rule should be abolished in California as contrary to public policy and violative of due process standards. Our high court has not yet seen fit to adopt appellant's argument. While the felony murder has been subjected to recent criticism and limited in its scope, its essential validity continues to be recognized. (See e.g., People v. Burton (1971) 6 Cal.3d 375, 386-387 [99 Cal. Rptr. 1, 491 P.2d 793]; People v. Mattison (1971) 4 Cal.3d 177, 184-186 [93 Cal. Rptr. 185, 481 P.2d 193].) We note that our high court recently employed the felony-murder rule to affirm a first-degree murder conviction in People v. Ramos (1982) 30 Cal.3d 553, 586-587 [180 Cal. Rptr. 266, 639 P.2d 908]. Until such time as a contrary position is taken by our Supreme Court, we must adhere to existing law. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937].)
[*] Assigned by the Chairperson of the Judicial Council.