[Crim. No. 3779. Fourth Dist., Div. One. Feb. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE THOMAS CHAVEZ, Defendant and Appellant.

**COUNSEL**

Paul K. Duffy for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AULT, J.**—Appellant, Eugene Thomas Chavez, and his codefendant, Gary Wayne Cottrell, were charged in count I of an information with violation of Penal Code section 211 (robbery), and in count II with violation of Penal Code section 209 (kidnaping for the purpose of robbery). A jury convicted appellant and Cottrell of both counts. Appellant's application for probation was denied. He was sentenced to prison on count I for the term prescribed by law under the provisions of Penal Code section 1202, subdivision (b). He was also sentenced to prison on count II, but execution of that sentence was stayed pending appeal and service of the sentence imposed under count I, the stay to become permanent upon completion of sentence under count I.

The questions presented on appeal make it unnecessary to recite the evidence in great detail. Mrs. Gertrude Greenman, who was 63 years of age, was walking to her babysitting job in Huntington Beach early on the morning of September 26, 1968. Near the intersection of Beach Boulevard and Atlanta Street two "young boys" came out from a construction area and asked her for directions to the nearest traffic light. Mrs. Greenman stated she did not know and continued on her way. After walking approximately three blocks, she was again approached by the same two "boys"

who this time asked how far it was to the intersection of Brookhurst and Argus Streets. When Mrs. Greenman again answered she did not know, each of the boys grabbed her by an arm, one placed his hand over her mouth, and she was forced across the street through an open field and into an area near some oil storage tanks, a distance of approximately 240 feet from the place where she had first been accosted.

Mrs. Greenman was thrown to the ground and told she would be killed if she screamed. Her assailants seized her purse, dumped its contents on the ground and took her money. While one of them was attempting to secure a blindfold around her head, Carl Fulton, an oil gauger employed by the State of California, came upon the scene. The "boys" fled and Mr. Fulton took Mrs. Greenman to the police station to report the incident.

The police obtained descriptions of the two assailants from Mrs. Greenman which were broadcast over the police radio. Within 15 minutes word came back that a suspect had been found. Mrs. Greenman, who was still at the police station, was taken to the area of the robbery. She identified appellant as one of those who had robbed her. While still at the scene, Cottrell was brought up by another officer. Mrs. Greenman identified him as her other assailant.

Mrs. Greenman testified at the preliminary hearing concerning the events which had taken place on September 26, 1968. She again identified appellant and Cottrell as the persons who had accosted and robbed her. She was cross-examined at length by the public defender who represented appellant and Cottrell at the hearing. Before trial, a hearing was held in which a physician testified Mrs. Greenman's physical condition was such requiring her to testify at the trial would endanger her life. The trial judge ruled Mrs. Greenman need not testify at the trial and that he would permit her preliminary hearing testimony to be read to the jury.

Appellant's trial attorney then urged objections to some questions asked of Mrs. Greenman to which no objection had been interposed by the public defender at the preliminary hearing. The court sustained objections to some questions and overruled them as to others. The trial was commenced, and under appropriate instructions the transcript of Mrs. Greenman's testimony, given at the preliminary hearing, was read to the jury. The questions to which the court had sustained objections and the answers to those questions were not read. In chambers, after both sides had rested, but before argument, the trial judge announced he was reversing his previous ruling on three questions asked of Mrs. Greenman at the preliminary hearing and would sustain rather than overrule appellant's objections to them. The questions, together with Mrs. Greenman's answers thereto, had already been read to the jury. The court neglected to inform the jury about this

change of ruling or to advise the jury specifically the testimony had been stricken and should be disregarded.[1]

Appellant's sole contention on appeal is the court's failure to inform the jury of its changed ruling, and its failure to instruct the jury the answers to the three questions had been stricken and should be disregarded, constitutes prejudicial error requiring reversal. We reject the contention for several reasons.

Appellant objected to the three questions under consideration on the grounds each (1) was leading and suggestive and (2) called for the opinion and conclusion of the witness. Both of these grounds for objection involve broad discretion and a trial court's error in allowing a question to be answered in the face of either will seldom result in reversal. (Witkin, Cal. Evidence (2d ed. 1966), pp. 1071-1074; 1077-1079.) Assuming the questions to be leading and to call for conclusionary answers, appellant has not shown the answers to them to be sufficiently prejudicial to warrant reversal.

Furthermore, it would appear the court erred in reversing its original decision to overrule the objection to the three questions. Evidence Code section 1291 provides in part: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and:

". . . . . . . . . . . . . . . . .

"(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that he has at the hearing.

"(b) The admissibility of former testimony under this section is subject to the same limitations and objections as though the declarant were testifying at the hearing, except that *former testimony offered under this section is not subject to*:

---

[1] The three questions with which we are concerned, and Mrs. Greenman's answers thereto are:

"Q: Now, Mrs. Greenman, going back to this incident when it first occurred, did you have a good view of Mr. Chavez, when he and Mr. Cottrell first asked you for directions?

A: Oh, yes.

Q: And did you have a good view of Mr. Chavez and Mr. Cottrell on the second time they asked you for directions?

A: Yes, sir.

Q: And is your identification of these two defendants in court today as a result of your observation of them at the time that they asked you for directions and grabbed you by the arms?

A: Yes, Sir."

"(1) *Objections to the form of the question which were not made at the time the former testimony was given.*" (Italics added.)

█ Evidence Code section 1291 applies to criminal as well as civil cases. (*People* v. *King,* 269 Cal.App.2d 40, 47 [74 Cal.Rptr. 679].) █ While a preliminary hearing usually results in a less exhaustive examination of witnesses than a trial, ". . . the interest and motive for the cross-examination of a prosecution witness in both proceedings are similar." (*Ibid.*) █ The objections made by trial counsel were not raised at the preliminary hearing; they went to the form of the questions, and Evidence Code section 1291 does not permit them to be interposed as to formerly recorded testimony for the first time at trial. The objections should have been overruled; therefore appellant was not entitled to the instruction he now complains the court failed to give.

█ Even if we were to assume appellant was entitled to such an instruction, the failure to give it was cured by what took place at the trial. After the jury had deliberated for a short time, it returned to the courtroom and requested that Mrs. Greenman's preliminary hearing testimony be re-read. The final version of her testimony as re-read to the jury did not contain the questions and answers about which appellant complains.

The case was tried and appellant's brief was filed before the decision in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], which the Attorney General commendably brings to our attention as raising the propriety of appellant's conviction of the crime of kidnaping for the purpose of robbery.

Penal Code section 209 makes punishable: "Any person who . . . kidnaps, or carries away any individual to commit robbery, . . ." Penal Code section 207 defines kidnaping as the act of one: ". . . who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county . . ." Before *Daniels,* the phrase "kidnaps or carries away" as used in section 209 was construed to mean the act of forcibly moving the victim any distance, no matter how short, or for what purpose. "It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state." (*People* v. *Chessman,* 38 Cal.2d 166, 192 [238 P.2d 1001]; See also *People* v. *Wein,* 50 Cal.2d 383, 399-400 [326 P.2d 457].) In *Daniels,* the Supreme Court specifically disapproved the construction of section 209 declared in *People* v. *Chessman, supra,* and reiterated in *People* v. *Wein, supra.* At page 1139 the court stated: "Rather, we hold that the intent of the Legislature in

amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies (e.g., *People* v. *Knowles* (1950) *supra,* 35 Cal.2d 175 [217 P.2d 1]) but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (*People* v. *Daniels,* 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225].)

The court concluded the brief movements the defendants' victims had been compelled to make in each robbery were incidental to the robbery and did not substantially increase the risk of harm otherwise present. It reversed the defendants' convictions of kidnaping for the purpose of robbery (Pen. Code, § 209), stating at page 1140: "Movement across a room or from one room to another, in short, cannot reasonably be found to be asportatin [*sic*] 'into another part of the same county.' (Pen. Code, § 207.)"

Five recent appellate court decisions have followed *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225].[2] In each of these cases Penal Code section 209 kidnaping convictions were reversed because the movement of the robbery victim was either within the same room or from one room to another. In each instance, the court was able to declare the movement involved was incidental to the crime of robbery and did not substantially increase the risk of harm otherwise present.

In *People* v. *Ramirez,* 2 Cal.App.3d 345 [82 Cal.Rptr. 665], recently decided by this court, an opposite result was reached. The defendant had been convicted of kidnaping, assault with intent to commit rape and attempted rape, all arising out of the same incident. We upheld the kidnaping conviction even though the jury had not been instructed in accordance with the rules laid down in *Daniels*. In *Ramirez, supra,* the victim had been taken from a parking lot, forced into an automobile, and driven for a substantial distance. When interrupted by the police, defendant and his accomplice attempted to escape in the car, taking the victim with them. In the chase which followed, the car overturned and the accomplice received fatal injuries. We held the failure to instruct in accordance with *Daniels* to be error, but concluded under the facts of the case there had been no miscarriage of

[2]*People* v. *Ross,* 276 Cal.App.2d 729 [81 Cal.Rptr. 296]; *People* v. *Ballard,* 1 Cal.App.3d 602 [81 Cal.Rptr. 742]; *People* v. *Blair,* 2 Cal.App.3d 249 [82 Cal. Rptr. 673]; *People* v. *Cheffen,* 2 Cal.App.3d 638 [82 Cal.Rptr. 658]; *People* v. *Green,* 3 Cal.App.3d 240 [83 Cal.Rptr. 491].

justice as it was not reasonably probable a result more favorable to the defendant would have been reached in the absence of the error.

In many instances, the question whether the movement of a robbery victim was incidental to the robbery or whether such movement substantially increased the risk of harm to the victim not otherwise present, cannot be answered as a matter of law and will require a factual determination by the jury. We believe the instant case to be in this category. ■ Mrs. Greenman was accosted on a public street and forcibly removed a distance of 240 feet to an area in a vacant lot where her money was taken from her purse. We are unable to hold as a matter of law this movement was or was not incidental to the robbery or that it did or did not substantially increase the risk of harm not otherwise present. These determinations should have been made by a jury under proper instructions by the court.

Such determinations were not made by the jury in this case, because the trial took place before the decision in *People* v. *Daniels, supra,* 71 Cal.2d 1119. Insofar as the kidnaping count is concerned, the jury was instructed in accordance with the rules enunciated in *People* v. *Chessman, supra,* 38 Cal.2d 166, 192 and *People* v. *Wein, supra,* 50 Cal.2d 383, 399-400, which *Daniels* has now overruled. Had the jury been instructed in accordance with the law as established in *Daniels,* it appears reasonably probable a result more favorable to the appellant might have been reached. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

We note the trial court suspended execution of sentence under count II (Pen. Code, § 209—kidnaping for the purpose of robbery) and sentenced appellant under count I (Pen. Code, § 211—second degree robbery), which carries a lesser maximum sentence. Since we must reverse the kidnaping conviction, we call attention to the case of *People* v. *Hood,* 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370] which under this circumstance would preclude additional penalty should appellant be convicted under Penal Code section 209 on any retrial.

The judgment is affirmed as to count I and reversed as to count II.

Brown (Gerald), P. J., and Coughlin, J., concurred.