[No. H001779. Sixth Dist. Oct. 16, 1986.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
WILLIAM MICHAEL HIMMELSBACH, Real Party in Interest.

## COUNSEL

John K. Van de Kamp, Attorney General, Martin S. Kaye and Michael Mintz, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

James W. Blackman for Real Party in Interest.

## OPINION

AGLIANO, P. J.—The People petition for a writ of mandate compelling the trial court to vacate its disposition of criminal charges against real party in interest, William Michael Himmelsbach (hereafter defendant). The People contend the trial court (1) based its disposition on an unfounded determination that any prison sentence would constitute cruel and unusual punish-

ment, (2) engaged in impermissible plea bargaining, and (3) circumvented the probation bar of Penal Code section 12311 by its improper application of Penal Code section 654.[1] We conclude extraordinary relief is warranted.

## I.

### *Procedural History*

The defendant was charged in the information as follows: Count I—second degree burglary (§§ 459, 460, subd. 2); count II—receiving stolen property (§ 496); count III—entering with intent to commit crime and opening a safe with explosives (burglary with explosives) (§ 464); count IV—possession of explosives with intent to injure (§ 12303.3); count V—possession of explosives (§ 12303); and count VI—possession of explosives with intent to injure (§ 12303.3). Apparently counts I, II, III, and IV arose from the commission of a single burglary, while counts V and VI arose from the possession of explosives at the time of arrest.

At the change of plea hearing, defense counsel announced defendant's intent to plead guilty to counts I, III, IV, V, and VI based upon the disposition which the court had indicated in chambers that morning: probation with a two-year county jail condition. The court explained how it would reach that result. Upon objection by the prosecution, the court stated: "The Court feels that a State Prison sentence imposed upon this particular defendant could well result in serious bodily injury—great bodily injury—to himself or even death should he be placed within the confines of a State Prison and his identification become known, as it most undoubtedly would be. The name is quite distinctive and not one to be lost with the Browns and the Smiths that might be found elsewhere."

Defendant entered pleas of guilty to all counts, except count II. His codefendant entered identical pleas and also admitted a prior conviction within the meaning of section 1203, subdivision (e)(5), which prohibits the grant of probation, absent unusual circumstances, to a person convicted of burglary with explosives who has a prior felony conviction.

Second degree burglary is punishable by imprisonment in the county jail for a term not exceeding one year or in state prison for a term of sixteen months, two years or three years. (§§ 461, subd. 2, 18.) Burglary with explosives is punishable by a term of three, five, or seven years in state prison. (§ 464.) Possession of explosives with intent to injure is punishable

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

by a term of three, five, or seven years in state prison. (§ 12303.3.) Simple possession of explosives is punishable by imprisonment in the county jail for a term not exceeding one year or in state prison for sixteen months, two years or three years. (§§ 12303, 18.)

. Violations of sections 12303.3 and 12303 (possession of explosives with intent to injure and possession of explosives) are subject to section 12311. That section states: "No person convicted of a violation of this chapter shall be granted probation, and the execution of the sentence imposed upon such person shall not be suspended by the court."

The trial court sentenced the codefendant to a three-year term of state prison, but did not require defendant to serve any term in state prison despite its express finding that defendant deserved comparable punishment. Avoiding execution of a commitment to state prison, the court did the following: imposed a one-year county jail term on count V (possession of explosives); imposed the lower term but stayed execution of sentence pursuant to section 654 on count VI (possession of explosives with intent to injure) as an offense arising from the same act as count V; granted probation by suspending imposition of sentence with condition of a consecutive one-year term in county jail on count III (burglary with explosives); imposed the lower term but stayed execution of sentence pursuant to section 654 on counts I and IV (second degree burglary and possession of explosives with intent to injure) as offenses arising from the same conduct as count III; and dismissed count II pursuant to section 1385.[2]

The court made the following remarks: "The codefendant in this case . . . has already been sentenced to state prison for three years by me. This defendant, William Himmelsbach, deserves a similar penalty. There are,

[2] SUMMARY OF SENTENCE

| Count | Offense | Prescribed Punishment | Sentence |
|---|---|---|---|
| I | Second Degree Burglary (§§ 459; 460.2; 461; 18) | County jail or state prison—16 months, 2 or 3 years | Lower term—16 months; execution stayed per § 654 |
| III | Burglary with Explosives (§ 464) | State prison—3, 5, or 7 years | Probation—with consecutive 1-year county jail term condition |
| IV and VI | Possession of Explosives With Intent to Injure (§ 12303.3) | State prison—3, 5, or 7 years | Lower term—3 years; execution stayed per § 654 |
| V | Possession of Explosives (§§ 12303; 18) | County jail or state prison—16 months, or 2 or 3 years | 1 year county jail |

however, three factors which constrain me to treat him differently: [¶] First is his lack of substantial criminal record, whereas the codefendant had a prior felony conviction. [¶] The second is his physical appearance: blond and slender, which would make him the target of sexual abuse in a state prison. [¶] Neither of these would stand in the way of a state prison sentence, but the third, when considered in conjunction with the other two, brings me to make a local disposition. That is the fact that he bears the surname of the District Attorney of this county, who is reputed to be a hard-liner on crime and has caused more criminals to go to state prison that [*sic*] might otherwise have been the case. This distinction would make this defendant the target of revenge and probably result in very serious risk to his person and life. This probability would make a state prison commitment a cruel and unusual punishment, exceeding that which this Court could impose."

## II.

### *Propriety of Review by Extraordinary Writ*

The People and real party disagree regarding the propriety of writ review. We conclude that writ review is available and appropriate in this instance.

■ Writ review is ordinarily available where there is no plain, speedy, and adequate remedy in the ordinary course of the law. (Code Civ. Proc., §§ 1085, 1086.) However, the People's ability to obtain extraordinary relief is severely restricted where no right to appeal has been provided by the Legislature. (*People* v. *Superior Court* (1968) 69 Cal.2d 491, 497-498 [72 Cal.Rptr. 330, 446 P.2d 138].)

In this case, the stay of execution of sentence pursuant to section 654 is appealable by the People. (*People* v. *Perez* (1979) 23 Cal.3d 545, 549, fn. 2 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Mendevil* (1978) 81 Cal.App.3d 84, 87-88 [146 Cal.Rptr. 65]; see § 1238, subd. (a)(5).) However, the People have no right to appeal from the court's acceptance of defendant's pleas or imposition of sentence on counts I, IV, V, and VI. (See § 1238; cf. *People* v. *Rivera* (1984) 157 Cal.App.3d 494, 498 [203 Cal.Rptr. 722].)[3]

---

[3]Arguably, the granting of probation on a burglary with explosives offense might be appealable by the People if the explosives possessed at the time of the offense or arrest could be deemed a deadly weapon since absent unusual circumstances probation may not be granted to a person convicted of burglary with explosives who was unlawfully armed with a deadly weapon other than a firearm at the time of the offense or arrest and since a grant of probation to an ineligible offender is considered an order reducing the punishment imposed. (See §§ 1203, subd. (e)(1), 1238, subd. (a)(6); cf. *People* v. *Villegas* (1971) 14 Cal.App.3d 700, 703-704 [92 Cal.Rptr. 663]; *People* v. *Hames* (1985) 172 Cal.App.3d 1238, 1240-1242 [218 Cal.Rptr. 701]; cf. *People* v. *La Fave* (1979) 92 Cal.App.3d 826, 829-830 [156 Cal.Rptr. 63].)

"If the prosecution has not been granted by statute a right to appeal, review of any alleged error may be sought by a petition for writ of mandate *only* when a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused. [Citations.] Mandate is not available to the prosecution for review of 'ordinary judicial error' [citation] or even 'egregiously erroneous' orders [citations] when the order or ruling 'on its face is a timely exercise of a well-established statutory power of trial courts . . . from which no appeal is provided in section 1238.' [Citation.]" (*People* v. *Superior Court (Stanley)* (1979) 24 Cal.3d 622, 625-626, fn. omitted [156 Cal.Rptr. 626, 596 P.2d 691].)

In *People* v. *Superior Court, supra,* 69 Cal.2d 491, the Supreme Court discussed but did not define the term "jurisdiction." (*Id.,* at pp. 500-501.) It noted that five cited decisions ". . . applied, to a limited degree, the definition of jurisdiction established by *Abelleira* v. *District Court of Appeal,* [(1941)] 17 Cal.2d 280, 291 . . ., where it was held that a court acts in excess of jurisdiction, insofar as that term is used to indicate the availability of prohibition and certiorari, when its acts exceed the defined power of a court in any instance whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis.* [Citation.]" (*Id.,* at p. 500.) However, the court stated this test would make the People's right to writ review too extensive and emphasized the need for a delicate balancing of competing considerations of preventing harassment of the accused and correcting possible judicial errors. (*Id.,* at p. 501.) It concluded that ". . . proper balancing of these considerations prohibits review by mandate at the request of the People where . . . there is a danger of further trial or retrial." (*Id.,* at p. 501.)

Since that seminal case, courts have generally taken a broad view of "jurisdiction" in the context of a People's petition for writ of mandate. (See, e.g., *People* v. *Superior Court* (1971) 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202] [order granting defendant's section 1538.5 motion, which court had no statutory authority to entertain at that time]; *People* v. *Municipal Court (Bonner)* (1980) 104 Cal.App.3d 685, 693-695 [163 Cal.Rptr. 822] [order compelling production of police reports where defendant made no showing whatsoever in support of the order]; *In re Richard C.* (1979) 89 Cal.App.3d 477, 484 [152 Cal.Rptr. 787] [juvenile court order based upon erroneous interpretation of Supreme Court case on point]; *People* v. *Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 483-486 [148 Cal.Rptr. 698] [sentence imposed under wrong statute]; *People* v. *Municipal Court (Gelardi)* (1978) 84 Cal.App.3d 692, 695-701 [149 Cal.Rptr. 30] [unauthorized order continuing case for six months for a dismissal conditioned upon defendant's good behavior in interim]; *People* v. *Superior Court*

*(Brodie)* (1975) 48 Cal.App.3d 195, 198-201 [121 Cal.Rptr. 732] [order striking a special circumstance allegation based solely upon a misinterpretation of the applicable statute]; *People* v. *Thompson* (1970) 10 Cal.App.3d 129, 137 [88 Cal.Rptr. 753] [unauthorized order vacating guilty plea on the court's own motion where defendant had declined its invitation to so move]; but cf. *People* v. *Municipal Court (Kong)* (1981) 122 Cal.App.3d 176 [175 Cal.Rptr. 861] [meaning of "jurisdiction" restricted to subject matter or personal jurisdiction]; cf. e.g., *People* v. *Superior Court (Levy)* (1976) 18 Cal.3d 248 [133 Cal.Rptr. 624, 555 P.2d 633]) [order directing the People to disclose identity of confidential informant constitutes ordinary judicial error]; *People* v. *Superior Court (Stanley), supra,* 24 Cal.3d 622 [order directing a change of venue constitutes ordinary judicial error].)

Disposition of a case based upon a factually unfounded determination that any state prison term would be unconstitutional and judicial plea bargaining in contravention of existing law are acts in excess of a court's "jurisdiction," given the broad construction of that term in the context of a mandamus petition by the People. In addition, where such acts occur, the need for review outweighs any potential harassment of the accused. Issuance of a writ of mandate would at most result in the loss of the benefit of an unauthorized disposition. In such case, the defendant would be given the opportunity to withdraw his guilty plea and proceed to trial for the first time or to stand by his plea and face the mandated range of sentences unless it is proven on the record that any prison term would constitute cruel and unusual punishment under the circumstances.

The conclusion that writ review is appropriate is buttressed by two recent cases, *People* v. *Superior Court (Beasley)* (1984) 159 Cal.App.3d 131 [205 Cal.Rptr. 413] and *People* v. *Superior Court (Ludwig)* (1985) 174 Cal.App.3d 473 [220 Cal.Rptr. 87]. In the case of *People* v. *Superior Court (Beasley),* the People filed a mandamus petition to set aside a trial court's order placing a defendant, who had been convicted of a third drunk driving offense within five years, on probation without any jail time despite the statutory requirement that a year be served in jail as a probation condition. The court had impliedly found that the service of any jail time by defendant, who suffered from an unidentified severe permanent injury *(id.,* at p. 133), would have inflicted cruel and unusual punishment. Although defense counsel had argued at sentencing that the defendant would suffer unduly from any confinement, no evidence had been presented concerning jail conditions or the defendant's medical needs. *(Id.,* at p. 136.)

The reviewing court in *Beasley* acknowledged that courts retain "jurisdiction" to adjust the terms of punishment to avoid punishment which is cruel and unusual, but nevertheless directed issuance of a writ of mandate

compelling the trial court to vacate its sentence. While it did not expressly consider the propriety of a writ petition, review was appropriate since the trial court's cruel and unusual determination was completely without any evidentiary foundation. (Cf. *People* v. *Municipal Court (Bonner), supra,* 104 Cal.App.3d at pp. 693-694.)

In *People* v. *Superior Court (Ludwig), supra,* the reviewing court held that the twofold requirement for writ review at the behest of the People was met where the trial court accepted a guilty plea after engaging in plea bargaining with the defendant. It concluded: "Just as the [trial] court was without subject matter jurisdiction to entertain a renewed motion to suppress evidence at trial in *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605 . . ., the court here was without subject matter jurisdiction to plea bargain with defendant." (*Id.,* at p. 475.) Although the *Ludwig* court claimed to be following *People* v. *Municipal Court (Kong), supra,* 122 Cal.App.3d 176, which held that writ review of a nonappealable judicial action at the request of the People was appropriate only if the lower court had acted in excess of its jurisdiction in the traditional sense (*id.,* at p. 475), the reviewing court in fact applied the term "jurisdiction" more broadly. (Cf. 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, §§ 5, 9, pp. 370, 374 [subject matter jurisdiction means a court's authority over particular type of action].)

Regarding harassment, the *Ludwig* court stated: "[T]here is no danger of further trial or retrial of defendant, within the meaning of *People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491. If the writ is granted, defendant will merely be faced with the choices of a contested trial or pleading guilty or nolo contendere. These consequences do not rise to the level of harassment from further trial or retrial which caused the *Howard* court concern. Plea changes are a common occurrence in criminal practice and do not impose particularly onerous burdens on defendant. At most, defendant loses the temporary advantage and satisfaction of an illicit plea bargain and is returned to the prebargain state." (*Ibid.*) This reasoning is persuasive here.

We conclude writ review of the entire disposition is appropriate since impermissible judicial plea bargaining and an unfounded determination regarding cruel and unusual punishment allegedly tainted the whole sentencing process.

### III.

#### *Cruel and Unusual Punishment*

■ The People contend the court erred in concluding any prison term would constitute cruel and unusual punishment because defendant is the son

of the Santa Clara County District Attorney and therefore likely to be abused by other inmates. The United States and California Constitutions prohibit cruel and unusual punishment. (U.S. Const., Amend. VIII; Cal. Const., art. I, § 17.)[4] Conditions of confinement are an aspect of punishment which may be scrutinized under these constitutional provisions. (*Rhodes* v. *Chapman, supra,* 452 U.S. at p. 345 [69 L.Ed.2d at pp. 67-68]; *Inmates of the Riverside County Jail* v. *Clark* (1983) 144 Cal.App.3d 850, 858-859 [192 Cal.Rptr. 823].)

Punishment is cruel and unusual if (1) it makes no measurable contribution to acceptable goals of punishment and, hence, is nothing more than unnecessary and wanton infliction of pain and suffering; or (2) it is grossly disproportional to the severity of the crime. (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 148-149 [197 Cal.Rptr. 79, 672 P.2d 862]; *Rhodes* v. *Chapman, supra,* 452 U.S. at pp. 345-346 [69 L.Ed.2d at p. 68].) A prison environment which subjects an inmate to a continual unreasonable risk of sexual assault or violence at the hands of fellow prisoners might be deemed an infliction of cruel and unusual punishment since the threat or occurrence of such victimization serves no penological purpose. (Cf. *Inmates of the Riverside County Jail* v. *Clark, supra,* 144 Cal.App.3d at pp. 864-866.)

However, in this case, there has been no showing of such risk to defendant. While it is conceivable that incarceration in state prison might pose special dangers for defendant and ordinary security measures might not suffice, the defense did not make any such argument or present any facts to substantiate that contention on the record. Moreover, there was no evidence that state correctional officials could not or would not provide any additional safeguards necessary to ensure defendant reasonable personal protection.[5] Con-

---

[4]The California Constitution actually prohibits "cruel or unusual punishment," but this distinction is not at issue here. The prohibition of the United States Constitution is applicable to the states through the Fourteenth Amendment. (*Rhodes* v. *Chapman* (1981) 452 U.S. 337, 344-345 [69 L.Ed.2d 59, 67, 101 S.Ct. 2392].)

[5]To the contrary, there was some evidence that the Department of Corrections could afford defendant reasonable protection from other inmates. An official of the Department of Corrections, at the request of the Attorney General's office, sent a letter to the Santa Clara County Probation Department regarding the ". . . Department of Corrections' ability to safely house inmates whose life might be in danger because of the inmate's background." The letter, incorporated in the probation report of which we take judicial notice (Evid. Code, § 452, subd. (d)(1); § 1203d), stated: "[T]he Department of Corrections has considerable experience safely housing cases of notoriety, individuals with political and law enforcement backgrounds, sex offenders and a wide variety of other offenders. When processing a person into the department, reception center staff consider all elements in the person's background including physical stature, age and level of maturity in determining the most appropriate placement. [¶] In most instances, inmates are placed in the general population of one of our twelve institutions. However, if the safety of the community, institutional security or the safety of the inmate cannot be met in the general population, the department has special housing units such as protective custody in which the inmate can be placed. The department

sequently, the trial court's conclusion that any state prison sentence would constitute cruel and unusual punishment was unfounded.

As the United States Supreme Court has stated, "'Eighth Amendment judgments should neither be nor appear to be merely the subjective views' of judges. [Citation.] To be sure, 'the Constitution contemplates that in the end [a court's] own judgment will be brought to bear on the question of the acceptability' of a given punishment. [Citations.] But such "'judgment[s] should be informed by objective factors to the maximum possible extent."'" [Citation.]" (*Rhodes* v. *Chapman, supra,* 452 U.S. at p. 346 [69 L.Ed.2d at pp. 68-69].) Here, the trial court based its disposition on a wholly unsupported conclusion that any state prison term would constitute cruel and unusual punishment. Hence, the disposition must be vacated.[6]

## IV.

### *Penal Code Section 654*

In this case, one group of three offenses arose from the indivisible course of conduct surrounding a burglary and another group of two offenses arose from the same act of possession of explosives at the time of arrest. As to the first group, the trial court imposed a state prison sentence on the second degree burglary (count I) and the possession of explosives with intent to injure (count IV), but granted probation for and suspended imposition of sentence on the burglary with explosives (count III). The court then stayed the two terms of imprisonment pursuant to section 654, leaving the defendant to serve probation on count III. As to the second set, the trial court imposed a state prison term on the possession of explosives with intent to injure (count VI) and a one year county jail term on the simple possession of explosives (count V). The court then stayed the state prison term pursuant to section 654, leaving defendant to serve the county jail term.[7] The People

---

makes arrangements to place inmates out-of-state, if they cannot be safely housed within. . . . [¶] In conclusion, I cannot respond specifically to the case of Mr. William M. Himmelsbach. However, the case factors presented in [the deputy attorney general's] letter do not present any unusual problems that we have not successfully dealt with before."

[6]In light of our conclusions, we need not reach the issue of unlawful judicial plea bargaining. However, we do address the issue of staying execution of sentence pursuant to section 654 since that matter may arise upon resentencing.

[7]Our Supreme Court recently reiterated prior holdings that multiple convictions may not be founded upon both greater and necessarily included offenses as defined by law. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].) None of the offenses of which defendant was convicted are necessarily included offenses based upon their statutory definitions. However, some of the charges are necessarily included offenses factually speaking. While not reaching this issue, the Supreme Court in *Pearson* indicated a reluctance to expand the existing rule limiting multiple convictions to include factually included offenses. (*Id.,* at pp. 355-356, fn. 2.) Since the origin of and rationale for the rule is obscure (*id.,* at p. 355; see also *People* v. *Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512]; *People* v. *Tideman* (1962) 57 Cal.2d 574, 581-582, 588 [21 Cal.Rptr. 207, 370 P.2d 1007]), we see no reason to extend it here.

argue that the legislative intent underlying the probation bar of section 12311 precludes such application of section 654.[8]

Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." ▮ "[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].)

Courts have avoided prohibited multiple punishment by imposing a sentence on each of the convictions arising from the same act or indivisible course of conduct, but staying execution of all but one of the sentences conditioned upon completed service of the executed term. (*People* v. *Avila* (1982) 138 Cal.App.3d 873, 879 [188 Cal.Rptr. 754]; see Cal. Rules of Court, rule 449.) A number of appellate cases have held that a trial court retains discretion under section 654 to stay execution of the greater sentences where more than one offense arises from an indivisible course of conduct. (See, e.g., *People* v. *Wesley* (1970) 10 Cal.App.3d 902 [89 Cal.Rptr. 377]; *People* v. *DeVaney* (1973) 33 Cal.App.3d 630, 639 [109 Cal.Rptr. 276], disapproved on another ground in *People* v. *Collie* (1981) 30 Cal.3d 43, 49, fn. 1 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *People* v. *Mendevil, supra,* 81 Cal.App.3d 84, 89; *People* v. *Cole* (1985) 165 Cal.App.3d 41, 53 [211 Cal.Rptr. 242]; *People* v. *Barela* (1983) 145

---

[8]The People alternatively argue that the language of section 12311 prohibiting "suspension of execution" of sentence explicitly precluded a stay, under section 654, of the sentence imposed on the two charges of possession of explosives with intent to injure. This contention is unpersuasive. There is a legal distinction between "suspending" a sentence and "staying" it. In the criminal sentencing context, the phraseology "stay of execution" is utilized where full execution of sentence is prohibited by law and must be avoided. (See, e.g., § 654 [multiple punishment prohibited]; § 1170.1, subd. (a) [computation of consecutive terms]; § 1170.1, subd. (g) [double the base term limitation]; Cal. Rules of Court, rules 447, 449.) In contrast, the words "suspension of execution" are employed in conjunction with a grant of probation, a conditional and revocable release into the community. (See, e.g., §§ 1203, 1203.1, 1203.2, 1203.3; Cal. Rules of Court, rules 433, 435.) While at one time the terms may have been used indiscriminately (see, e.g., *In re Wright* (1967) 65 Cal.2d 650, 655, fn. 4 [56 Cal.Rptr. 110, 422 P.2d 998]), they have developed into terms of art. The Legislature could have expressly prohibited a "stay" of execution in section 12311, but it did not.

Cal.App.3d 152, 157 [193 Cal.Rptr. 257]; *People* v. *Avila, supra,* 138 Cal.App.3d 873, 879; *People* v. *Bradley* (1981) 115 Cal.App.3d 744, 753 [171 Cal.Rptr. 487], disapproved on another ground in *People* v. *McDonald* (1984) 37 Cal.3d 351, 371, fn. 18 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].) We do not subscribe to that proposition.

The fountainhead of that line of cases is *People* v. *Wesley, supra,* 10 Cal.App.3d 902. In *Wesley,* the defendant was convicted of second degree murder, discharge of a firearm at an inhabited building, and assault with a deadly weapon, all of which arose from an indivisible course of conduct. The court stayed execution of the sentences imposed upon the first two convictions. The People argued the court erred because it should not have stayed execution of sentence on the murder conviction which carried the most severe penalty. (*Id.,* at p. 911.) The appellate court disagreed, interpreting section 654 as allowing the trial court in its discretion to punish defendant for any one of the offenses and finding support for this construction in *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370] and *People* v. *Chavez* (1970) 4 Cal.App.3d 832 [84 Cal.Rptr. 783]. (*Id.,* at pp. 911-912.)

We conclude that *People* v. *Wesley, supra,* was wrongly decided. "Section 654 was enacted in 1872 and, insofar as here relevant, has never been amended. The purpose of this legislative protection against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability. [Citation.]" (*People* v. *Perez, supra,* 23 Cal.3d at pp. 550-551.) While meant to ensure against multiple punishment for an indivisible transgression, the purpose of section 654 was not to provide courts with discretion to avoid imposition of the punishment prescribed for the most egregious offense of which the defendant stands convicted.

■ It is well settled that, subject to constitutional limitations, the Legislature possesses the exclusive power to define criminal offenses and prescribe punishment. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 519, fn. 3 [156 Cal.Rptr. 450, 596 P.2d 328]; *Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 765 [150 Cal.Rptr. 785, 587 P.2d 227]; *People* v. *Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 181 [217 P.2d 1].) Section 12 imposes a duty upon a sentencing court ". . . to pass sentence, to determine and impose the punishment prescribed." A sentencing court has no discretion to deviate from constitutionally permissible punishment prescribed by statute. (See *People* v. *Lara* (1984) 155 Cal.App.3d 570, 574 [202 Cal.Rptr. 262]; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638, 641 [82 Cal.Rptr. 658].)

Furthermore, neither *Hood* nor *Chavez,* the cases relied upon in *Wesley,* addressed the proper application of section 654 by trial courts. It so happened that in both *Hood* and *Chavez* the trial court had stayed execution of sentence on the more seriously punishable offense where the defendant had been convicted of two offenses arising from the same indivisible conduct. Both decisions invoked the rule that on remand, following a successful appeal by a criminal defendant, a trial court cannot inflict a greater punishment than it had previously. (*People* v. *Hood, supra,* 1 Cal.3d at p. 459; *People* v. *Chavez, supra,* 4 Cal.App.3d at p. 839.)

As authority for the rule, *Chavez* cited *Hood,* which in turn relied upon its earlier decision of *People* v. *Henderson* (1963) 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677] and two other cases following the reasoning of *Henderson.* In *Henderson,* the Supreme Court held that the California Constitution's guarantee against double jeopardy, now set forth in article I, section 15, precluded imposition of the death sentence after reversal of the first judgment sentencing defendant to life, i.e. imposition of a more severe sentence upon retrial. (*Id.,* at pp. 495-497; *People* v. *Serrato* (1973) 9 Cal.3d 753, 763-764 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on another ground in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].)[9] It stated: "A defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (*People* v. *Henderson, supra,* at p. 497.)

The Supreme Court has explained cases not following the rule of *Henderson* on the ground that they involved unauthorized sentences: "[An unauthorized] sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (*People* v. *Serrato, supra,* 9 Cal.3d at p. 764.)

*People* v. *Serrato, supra,* made the broad generalization that each of the cited cases following *People* v. *Henderson, supra,* which appeared to include *People* v. *Hood, supra,* involved a lawful sentence. (*Id.,* at p. 764.) ▪ However, it is well settled that cases are not authority for propositions not considered. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553].)

---

[9]Since *Henderson,* the United States Supreme Court has stated that neither the federal Constitution's protection against double jeopardy nor due process clause establish an absolute bar to a more severe sentence upon reconviction. (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 719-726 [23 L.Ed.2d 656, 666-670, 89 S.Ct. 2072].)

Neither *Hood* nor *Serrato* dealt with the scope of trial court discretion under section 654.

Since *People* v. *Wesley, supra,* courts have repeated without analysis that a trial court is not required to punish a defendant with the more severe penalty where there is a section 654 problem. (See, e.g., *People* v. *DeVaney, supra,* 33 Cal.App.3d 630, 639; *People* v. *Mendevil, supra,* 81 Cal.App.3d 84, 89; *People* v. *Cole, supra,* 165 Cal.App.3d 41, 53; *People* v. *Barela, supra,* 145 Cal.App.3d 152, 157; *People* v. *Avila, supra,* 138 Cal.App.3d 873, 879; *People* v. *Bradley, supra,* 115 Cal.App.3d 744, 753.)

This line of cases conflicts with long standing construction of section 654. ■ The California Supreme Court has stated that a defendant convicted of multiple offenses arising from an indivisible course of conduct must be punished for the more seriously punishable offense. (*People* v. *Knowles, supra,* 35 Cal.2d at pp. 188-189; *People* v. *Logan* (1953) 41 Cal.2d 279, 290-291 [260 P.2d 20]; *People* v. *Chessman* (1959) 52 Cal.2d 467, 496 [341 P.2d 679]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *McFarland* (1962) 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449].) In more than one instance, the Supreme Court has directed a trial court upon remand to sentence a defendant for the more serious of two offenses arising from an indivisible course of conduct if the defendant is reconvicted of both. (See, e.g., *People* v. *Ridley* (1965) 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124]; *People* v. *Quinn* (1964) 61 Cal.2d 551, 556 [39 Cal.Rptr. 393, 393 P.2d 705].) Although it has not spelled out the reasoning for subjecting a defendant to the more seriously punishable offense, the Supreme Court has indicated that it was simply complying with legislative prescription. (See, e.g. *People* v. *Logan, supra,* 41 Cal.2d at pp. 290-291; *People* v. *Knowles, supra,* 35 Cal.2d at p. 189.)

■ We believe that section 1385 is the proper vehicle for granting leniency where a defendant has been convicted of multiple offenses arising from an indivisible course of conduct and a trial court has a legitimate reason to punish the defendant for the less, rather than the more, serious offense.[10] Section 1385 specifically provides for dismissals in the interests of justice and requires a statement of reasons. That requirement "... acts as a restraint on the exercise of that discretion and contemplates that the exercise of such discretion be reviewable by a higher court. [Citations.]" (*People* v. *Sanders* (1983) 145 Cal.App.3d 218, 225 [193 Cal.Rptr. 331]; see *People* v. *Orin* (1975) 13 Cal.3d 937, 944 [120 Cal.Rptr. 65, 533 P.2d

---

[10]We do not imply, however, that section 1385 may be employed to circumvent a statutory provision prohibiting probation in a particular case.

193].) Judicial accountability and consistency are laudable goals, especially in an age of determinate sentencing. (See § 1170, subd. (a)(1).)

Consequently, we hold, without resorting to the probation bar of section 12311, that the trial court had no authority under section 654 to stay execution of the sentence imposed upon the most seriously punishable offense arising from an indivisible course of conduct.

Even assuming arguendo that courts retain some measure of discretion under section 654, we find that the trial court could not properly exercise it to circumvent the probation bar of section 12311. ■ It is clear from the face of section 12311 that the Legislature intended to preclude the grant of probation for certain unlawful acts. The court's action in granting probation for the burglary with explosives and staying the execution of sentence on the other two charges effectively granted defendant probation for his conduct. Section 12311 must be interpreted as placing limitations on the exercise of any discretion under section 654 since otherwise the legislative intent to prohibit probation for possession of explosives with intent to injure could be completely thwarted. (Cf. *People* v. *Bradley, supra,* 115 Cal.App.3d 744, 753-754.) Consequently, the trial court may not utilize section 654 to accomplish a de facto grant of probation for a disqualified offense.

Let a peremptory writ of mandate issue directing the court to (1) vacate its disposition in its entirety, (2) to permit the real party to withdraw his pleas of guilty upon proper notice and motion, and (3) otherwise proceed in a manner not inconsistent with the views expressed herein.

Brauer, J., and Simmons, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied January 29, 1987.

---

*Assigned by the Chairperson of the Judicial Council.