Filed 7/8/15  P. v. Fernandez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074884 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08379) |
| v. | |
| EDUARDO FERNANDEZ, | |
| Defendant and Appellant. | |

Defendant Eduardo Fernandez appeals his convictions for spousal abuse, failure to stop at the scene of an accident, and misdemeanor battery.  He contends the trial court erred in admitting evidence of his prior bad acts and that he was deprived of his right to present relevant evidence in his defense.  We affirm the judgment.

## FACTS AND PROCEEDINGS

Late one October night in 2011, Clorinda Rodriguez, defendant's girlfriend, called 911.  She reported defendant had beaten her up, broken a lamp on her head, dragged her through the house, and choked her.  She was crying and upset during the call.

1

Officer Yul Alameda of the Sacramento Police Department went to Rodriguez's residence to answer the domestic violence call. Alameda found Rodriguez standing outside the home she and defendant shared. Rodriguez reported she and defendant had been fighting about defendant's drinking. They were yelling and defendant threw tequila bottles on the floor. Defendant followed Rodriguez into the bedroom, yelling at her. He pushed her against a cabinet and grabbed her by the neck, then grabbed a lamp off the cabinet and hit Rodriguez over the head with it. He pulled her to the ground by her hair and started choking her. Rodriguez screamed for her seven-year old-son, E. When E. came into the bedroom, defendant stopped choking Rodriguez. Defendant told E. to go back into the living room, then pushed Rodriguez into a closet, grabbed her by the hair and pulled her to the ground again. He dragged her by the hair across the floor to the living room where E. was watching television. Defendant let go of Rodriguez and she left the house with E. They walked to a neighbor's house.

Later, Rodriguez returned to the house and saw defendant leaving in his truck. He collided with her SUV, which then collided with the neighbor's car. Rodriguez's SUV was pushed on top of the neighbor's car. Defendant drove away. He did not contact the neighbor or exchange information, including insurance information. The neighbor spent approximately $1,400 to repair her car.

Rodriguez showed Alameda a bump on her head. She had a scratch and red mark on her neck from defendant choking her. She said her head, neck and shoulder hurt from defendant grabbing her neck, pulling her by her hair and hitting her with the lamp. Inside the home, Alameda saw broken bottles on the floor, things knocked over in the bedroom, and a television and a lamp on the floor. Rodriguez said it was the lamp defendant had hit her with. Alameda took pictures of Rodriguez that night which showed her injuries.

Alameda also interviewed E. E. said he was watching television when he heard his mother screaming. He went into the bedroom and saw his father chocking his mother, then his father pushed his mother into a closet.

At trial, Rodriguez recanted her claims of abuse. Rodriguez did not want defendant convicted and she wanted the charge dropped. At trial, she testified she woke defendant up, cursing and yelling at him, and confronted him about calls he had made to another woman. They argued, but defendant did not hit her, rather she bumped into the stand and the lamp fell on her. Rodriguez left the house with her son, and went to their friend's house, Elbia Ortiz. Rodriguez spoke with Ortiz and decided to spend the night there. She asked Ortiz to walk back home with her to get her things. Defendant had thrown bottles around the house, and broken picture frames and other glass items. In the bedroom, the television and other items had been knocked over. Rodriguez told defendant to leave or she would call the police. As he left, she saw him get into his truck, drive into her car, which then rammed the neighbor's car. Defendant then drove away.

Rodriguez testified she told police defendant had choked and dragged her because she was angry at defendant's infidelity and for wrecking the cars, and she wanted them to respond quickly. She told Alameda defendant had pulled her hair, but that was not true. She did not recall telling Alameda that defendant had grabbed her hair, pulled her to the ground, dragged her across the floor, and hit her on the head with the lamp.

Rodriguez had previous convictions for petty theft, petty theft with a prior, possession of marijuana for sale, and transportation of a controlled substance. Rodriguez denied defendant had been violent towards her or had ever hit her. She then admitted an incident in 2005.

In 2005, defendant and Rodriguez argued about his infidelity. Defendant admitted the infidelity but laughed despite the fact that Rodriguez was angry. They argued more and Rodriguez got in the car with her sister. Defendant came out to the car with a bat and smashed the back windows of the car while Rodriguez, her sister, and two infants were in the car. As he hit the car, defendant yelled, "You're going to die, bitch." Defendant stopped hitting the car when Rodriguez told him there were children in the car. Officer Aaron Wallace of the Sacramento Police Department answered the report of domestic

3

violence. He saw the car with a smashed front windshield, back windshield, and tail light, and a bat in the front yard. Rodriguez reported defendant had said he was going to kill her. She got out of the car and told him she was calling the police and he left. Sometime later, Rodriguez asked for the charges against defendant to be dropped.

Ortiz testified that Rodriguez came to her house that night upset because she had just learned defendant had cheated on her. Rodriguez did not appear distressed, did not have any injuries, and was not complaining of injuries. Ortiz accompanied Rodriguez back to the house to get Rodriguez's purse and waited outside. She did not hear any arguing and when Rodriguez came out of the house, she said everything was fine and they walked back to Ortiz's house. About five minutes later, she saw police responding to Rodriguez's house.

Defendant's former girlfriend, Maria Ceballos, lived with defendant between 2000 and 2003. In July 2002, they had an argument because defendant was spending time with his friends. Ceballos told defendant she was going to leave and he grabbed her by the arm, which left a mark. Ceballos's friend called the police. Ceballos did not tell law enforcement that defendant choked her. Because defendant threatened to kill her, he was taken to jail.

An information charged defendant with inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a) - count 1), assault with a deadly weapon, to wit, a lamp (Pen. Code, § 245, subd. (a)(1) - count 2), and leaving the scene of an accident (Veh. Code, § 20002, subd. (a) - count 3). Following trial, a jury found defendant guilty on counts 1 and 3. The jury found defendant not guilty on count 2, but guilty of the lesser included offense of simple battery. The trial court sentenced defendant to state prison for an aggregate term of three years.

4

I

*Defendant's Prior Conviction*

Defendant contends the trial court erred in admitting the evidence of his 2002 domestic violence against Ceballos. He contends the trial court erred because the incidents were dissimilar and the prior offense was remote.

Prior to trial, the People sought admission of defendant's 2002 prior conviction for spousal abuse (Pen. Code, § 273.5) against Ceballos under Evidence Code section 1109. (Unless otherwise stated, statutory section references that follow are to the Evidence Code.) The motion stated that Ceballos and defendant had been living together. They were walking home when defendant "grabbed [] Ceballos by the throat. As he began to choke the victim, he asked for his rent money back. [Defendant] told the victim, 'if you call the police, I'm going to kill you.' A friend of the victim overheard the threat and called the police. Officer Joseph Hinojosa of the Lindsay Police Department was [sent] to the call. The officer [saw] scratches [on] the arm of [] Ceballos, as well as a red bruise on [her] neck." Defendant pleaded no contest to a misdemeanor violation of Penal Code section 273.5.

Defense counsel objected to the admission of the 2002 prior on the grounds the offense was remote, just short of the 10-year presumptive statutory cut-off. He also argued the probative value was significantly diminished by the fact that defendant was only 18 years old at the time of the 2002 incident.

The trial court ruled, "The difference in age goes to weight, not admissibility. And I think that under the circumstances, the interest of justice would permit that this evidence be used. I don't have the Complaint in front of me, but July 15th, 2002 is apparently the date of the incident. And I don't know what the date of the alleged offense

5

is in this case, but it's close enough that I think it's admissible and under Evidence Code section 1109 I'm going to admit it."

Evidence of other acts is generally inadmissible to prove propensity to commit the charged acts. (§ 1101.) Section 1109 outlines an exception to this rule and provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd (a)(1).) The statute establishes a presumptively admissible time frame and permits the introduction of acts occurring within 10 years of the charged offense; older offenses may also be admitted if the court finds their admission to be in the interest of justice. (§ 1109, subd. (e).)

" ' "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense." ' [Citation.] Section 1109 was intended to make admissible a prior incident 'similar in character to the charged domestic violence crime, and which was committed against the victim of the charged crime or another similarly situated person.' [Citation.] Thus, the statute reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation. [Citation.] Indeed, proponents of the bill that became section 1109 argued for admissibility of such evidence because of the 'typically repetitive nature' of domestic violence. [Citation.] This pattern suggests a psychological dynamic not necessarily involved in other types of crimes. [Citation.]" (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531–532; fns. omitted.)

"By its incorporation of section 352, section 1109, subdivision (a)(1) makes evidence of past domestic violence inadmissible only if the court determines that its probative value is 'substantially outweighed' by its prejudicial impact. We review a challenge to a trial court's decision to admit such evidence for abuse of discretion. [Citations.]" (*People v. Johnson, supra*, 185 Cal.App.4th at p. 531, fn. omitted.)

6

" 'The prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 439.) Evidence is probative when it " 'tends logically and by reasonable inference to prove the issue upon which it is offered, that it is offered on an issue material to the prosecution's case, and is not merely cumulative.' " (*People v. Harris* (1998) 60 Cal.App.4th 727, 739-740.) The probative value of prior acts evidence "is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.) "We review the correctness of the trial court's ruling at the time it was made, . . . and not by reference to evidence produced at a later date." (*People v. Welch* (1999) 20 Cal.4th 701, 739.)

The record at the time the court ruled on the section 1109 motion, showed that defendant got into an argument with his live-in girlfriend, grabbed her by the throat, and began to choke her. He also threatened to kill her if she called the police. Responding law enforcement officers observed injuries to her arms and neck. Defendant pleaded no contest to a violation of Penal Code section 273.5.

The incident in question took place within the 10-year statutory timeframe, and thus it was presumptively admissible. Defendant offered nothing to rebut that presumption. The statutory timeframe "sets a threshold of presumed inadmissibility, not

7

the outer limit of admissibility." (*People v. Johnson, supra*, 185 Cal.App.4th at p. 539.) Moreover, "[e]ven a fairly remote prior conviction is admissible if the defendant has not led a legally blameless life since the time of the remote prior." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925-926.) Here, defendant had another domestic violence incident in 2005. The fact that defendant had not led a "legally blameless life," tends to increase the probative value of the 2002 prior conviction.

The prior act was no more inflammatory than the charged conduct. In fact, they were remarkably similar. In each incident, defendant and his live-in girlfriend argued, defendant got physical, grabbed the girlfriend and choked her with enough force to leave marks. While the prior act included a threat, the charged conduct included more violence, with defendant hitting the victim over the head with a lamp and dragging her across the floor. The prior act resulted in a criminal conviction. Moreover, the source of the evidence was entirely independent of the charged conduct. On this record, we see no abuse of discretion in admitting this evidence of prior acts of domestic violence.

II

*Evidence of False Allegations*

Defendant next contends he was deprived of his constitutional right to present relevant defense evidence. Specifically, defendant sought to present evidence that Rodriguez had previously made false allegations of physical abuse by a law enforcement officer. Again, we find no error.

Defendant moved in limine to admit evidence that in May 2000, Rodriguez filed a complaint against Sacramento County Sheriff Deputy Weddington, alleging Weddington had assaulted her, choked her, and caused injury and pain to her neck and wrists. The sheriff's department investigated the allegations and determined there were no injuries consistent with the alleged assault. Accordingly, the sheriff's department concluded the

8

allegations were false. Weddington was prepared to testify she did not choke or assault Rodriguez.

The trial court denied the motion. The trial court reasoned, "I'm not going to permit evidence of that allegation because it was never proven whether it was true or false, and it would be getting into a collateral issue for the jury to have to decide whether it happened or didn't happen." The trial court allowed, however, that Weddington could offer an opinion as to Rodriguez's credibility.

Later during trial, defense counsel reported he had spoken with Weddington and Weddington indicated she had no opinion as to Rodriguez's character for truthfulness. Accordingly, defense counsel chose not to call Weddington as a witness.

"Defendant contends his constitutional right to confront the witnesses against him was violated by the trial court's ruling. [Citation.] Although we recognize that a criminal defendant has a constitutional right to present all relevant evidence of *significant* probative value in his favor [citations.], '[t]his does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than "slight-relevancy" to the issues presented.' [Citation.] ' "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." '[Citations.]" (*People v. Jennings* (1991) 53 Cal.3d 334, 372, original italics.)

The definition of " '[r]elevant evidence' " includes "evidence relevant to the credibility of a witness . . . ,"; (§ 210) however, evidence that impeaches a witness by establishing prior acts of dishonesty is considered "collateral" in that it " 'has no relevancy to prove or disprove any issue in the action.' " (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9, quoting 1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 1997) §§ 27.105, 27.106, pp. 478-479.) Here, the proposed evidence had no purpose other than

9

to impeach Rodriguez--and bolster defendant--on collateral matters unrelated to defendant's guilt or innocence.  A criminal defendant has a "constitutional right to present all relevant evidence of *significant* probative value in his favor," but not to " 'an unlimited inquiry . . . into collateral matters.' " (*People v. Jennings*, *supra*, 53 Cal.3d at p. 372, original italics.)  To be admissible, " 'the proffered evidence must have more than "slight-relevancy" to the issues presented.' " (*Ibid*., quoting *People v. Northrop* (1982) 132 Cal.App.3d 1027,1042; see also *People v. Williams* (1996) 46 Cal.App.4th 1767, 1779 [court precluded examination of witness on whether he had given false testimony on another matter]; *People v. Morse* (1992) 2 Cal.App.4th 620, 640-641 [court excluded evidence that witness had taken his children out of state in violation of court order].)

Evidence of a victim making prior false accusations may be relevant on the issue of a victim's credibility if there is "conclusive evidence" of falsity.  (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1457-1458; see also *People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424.)  The trial court has discretion under section 352 to exclude evidence of prior reports of assault "if proof of the falsity of the prior complaint 'would consume considerable time, and divert the attention of the jury from the case at hand.' ([*People v.*] *Bittaker* [(1989) 48 Cal.3d 1046], 1097.)" (*Miranda, supra,* at p. 1424.)  The probative value of such evidence for purposes of impeachment depends upon proof the prior accusation was false and the trial court retains discretion under section 352 to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Admitting or excluding evidence under section 352 is a matter of discretion and we must uphold the exercise of that discretion unless the trial court acted in an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez*, *supra*, 20 Cal.4th at pp. 9–10.)

10

Here, the defendant offered Weddington's testimony that in 2000, she had not choked or assaulted Rodriguez, that the sheriff's department investigated the allegations and determined the allegations were false. To be relevant, defendant would have had to establish the claim was, in fact false. Weddington's testimony alone would not have established that; further testimony would have been needed from the sheriff's department regarding the details and results of their investigation. The trial court properly concluded the evidence would result in a mini-trial and confuse the jury.

In addition, " '[r]emoteness' or 'staleness' of prior conduct is an appropriate factor to consider in a section 352 analysis." (*People v. Harris*, *supra*, 60 Cal.App.4th at p. 739.) Here, it is a single incident which occurred in 2000, some 11 years before Rodriguez's statements in this case. The remoteness in time further diminishes the evidence's probative value. Given these factors, we cannot conclude that the court abused its discretion by precluding the evidence under section 352.

DISPOSITION

The judgment is affirmed.

                                                    HULL              , J.


We concur:


    RAYE              , P. J.


    BLEASE              , J.

11